THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. SHRUM.

[No. 2,935. Filed Nov. 29, 1899. Rehearing denied Feb. 13, 1900.]

CONTRACTS.—*Assumpsit.—Implied Contracts.—Quantum Meruit.*— One rendering services for another may, when the benefit of such service is enjoyed, recover the reasonable value of such service from the person who receives the benefit, although the services were rendered without the knowledge of the beneficiary; but a necessity for the rendition of the services without entering into a contract must exist, or there must exist such circumstances as imply an obligation to pay therefor. *pp. 97-105.*

ATTORNEY AND CLIENT.—*Services.—Implied Contracts.—Assumpsit.— Quantum Meruit.—Complaint.*—Averments in a complaint by an attorney for services rendered a railroad company, without contract or employment, in recovering taxes due the company, that the services rendered were necessary, and that the benefit to defendant would have been lost but for such services, are conclusions of the pleader, and were insufficient to show that a necessity existed for the performance of the services. *pp. 105-107.*

SAME.—*Services.—Implied Contract.—Assumpsit.—Quantum Meruit. Complaint.*—An averment in a complaint by an attorney for services rendered a railroad company in recovering taxes paid by the company, that defendant, after the claim was allowed, and plaintiff had notified defendant of its allowance, ratified the acts of plaintiff and drew the amount from the county treasury, does not amount to an allegation that defendant promised to pay plaintiff for such services, but that defendant adopted the acts of plaintiff. *p. 107.*

From the Montgomery Circuit Court.   *Reversed.*

*John T. Dye, P. S. Kennedy, S. C. Kennedy, Dumont Kennedy* and *W. H. Dye,* for appellant.

*Paul, Van Cleave & Paul* and *J. L. Shrum,* for appellee.

COMSTOCK, C. J.—The complaint in this cause is substantially as follows: The appellee filed a claim in the commissioners' court of Montgomery county, Indiana, on behalf of divers taxpayers of Union township, in said county, asking therein that certain money known as the fund for the purchase of toll roads be paid and returned to the several taxpayers who had paid the same; that defendant was among those to whom a portion of said fund was due; that, prior to the filing of said claim by the appellee, an effort was being made and arrangements being effected on the part of certain persons to have this fund diverted into the general township or county fund, and that the plaintiff filed the claim to defeat this purpose; that the plaintiff, at the cost of much time, labor, and expense, ascertained what specific amount of this fund was due the defendant; that the board of commissioners, after considering the claim filed by the plaintiff, admitted the legality of the same, and that it should be allowed, in so far as the distribution of the sum of $5,185.32 was concerned, and granted an order that the money should be paid to the persons named in the claim, to whomsoever the auditor was satisfied the same was payable; that without the labor and expense and time devoted to the claim by the plaintiff the defendant would never have known that any part of such sum was due it; that the defendant, after said claim was allowed by the commissioners, and after plaintiff gave defendant notice of such allowance, ratified the acts of the plaintiff, and drew from the treasury of the county the full sum of $253.76; that the defendant knew, before receiving said sum, that the plaintiff had expended much time and labor and expense in the work of securing the distribu-

tion of the fund, and that defendant gained such knowledge only through the plaintiff; that the services rendered to the defendant were necessary, and without such services the benefit to the defendant was wholly lost to it; that plaintiff is a practicing attorney, skilled in the knowledge of law as applied to such cases; that he rendered the services with the expectation of receiving a just compensation therefor; that the defendant refuses to pay plaintiff for the services rendered, although plaintiff demanded pay; that a reasonable fee for the services rendered is $126.88.

A demurrer to the complaint, for want of facts, was overruled, and an answer in two paragraphs was filed, the first a general denial. The second paragraph states that, long prior to the time the plaintiff filed the claim before the board of commissioners, the plaintiff learned that a portion of the fund was due the defendant; that a sufficient length of time elapsed, from the time when the plaintiff gained said information to the time when he filed said claim, to enable the plaintiff to inform the defendant that there was due it a portion of said fund; that during said period of time, from the time plaintiff gained said information until he filed said claim, the plaintiff knew that the defendant had competent attorneys in its employ, who then resided in the city of Crawfordsville; that during said period of time the plaintiff well knew that the general offices of the defendant were located at the city of Indianapolis, and that the general agents of the defendant resided at said city of Indianapolis; that during said period of time, before the filing of said claim, the plaintiff failed, refused, and neglected to inform the defendant, or any of its agents or attorneys, that a portion of said fund was due the defendant, or that he proposed to file said claim, nor did the plaintiff ask employment of the defendant, or seek to make a contract with the defendant; that the defendant never made any contract with the plaintiff, nor did it have any knowledge that the plaintiff proposed to file said claim, nor did the defendant have any knowledge that plain-

tiff had rendered any services in said matter until after the board of commissioners had made the order for the return to the taxpayers of a portion of said fund. To this paragraph of answer the court sustained a demurrer, to which ruling appellant excepted. Upon the issue thus formed, a trial resulted in a verdict and judgment in favor of appellee for $126.88, being one-half of the amount refunded appellant. The errors assigned are: (1) That the court erred in overruling the demurrer to the complaint; (2) in sustaining the demurrer to the second paragraph of answer; (3) in overruling appellant's motion for a new trial.

The complaint is based upon the doctrine of *quasi* contracts, being an implied obligation to pay for benefits under certain circumstances where an election to accept them has been made by the party entitled thereto. Appellee argues that it is only necessary that the complaint should state facts sufficient to show such *quasi* contract, and that it does make such showing; that it shows the acceptance of benefits resulting from appellee's labor.

Keener on Quasi Contracts, to which authority counsel for appellee refer, in treating of this subject, quotes liberally from Maine on Ancient Law. From a quotation set out at page 6, we make the following extract: "The part of Roman law which has had most extensive influence on foreign subjects of inquiry has been the law of obligation, or, what comes nearly to the same thing, of contract and delict. The Romans themselves were not unaware of the offices which the copious and malleable terminology belonging to this part of their system might be made to discharge, and this is proved by their employment of the peculiar adjunct *quasi* in such expressions as *quasi* contract and *quasi* delict. '*Quasi*,' so used, is exclusively a term of classification. It has been usual with English critics to identify the *quasi* contracts with implied contracts; but this is an error, for implied contracts are true contracts, which *quasi* contracts are not. * * * The commonest sample

of the class is the relation subsisting between two persons, one of whom has paid money to the other through mistake. The law, consulting the interests of morality, imposes an obligation on the receiver to refund; but the very nature of the transaction indicates that it is not a contract, inasmuch as the convention, the most essential ingredient of contract, is wanting."

In the same work are collected many cases illustrating the scope of the contracts under consideration. They are said, at page 16, in general, to be founded (1) "Upon record. (2) Upon a statutory or official or customary duty. (3) Upon the doctrine that no one shall be allowed to enrich himself unjustly at the expense of another." The claim of appellee is based upon the third class. One question presented, therefore, is whether, under the facts set out in the complaint, appellant has unjustly enriched itself at the expense of appellee.

A plaintiff seeking to recover for services rendered without the consent of the defendant has the burden of taking himself out of the well established rule that no one has the right to force himself upon another as his creditor. Keener on Quasi Contracts, 341. It can not be claimed in the case at bar that any obligation was imposed upon appellant to do the act for which appellee claims compensation, or that the public had an interest in its performance. When labor is performed under either of these conditions, compensation may be recovered from the person upon whom the law imposed the obligation. We refer to some of the cases cited by Keener. In *Jenkins* v. *Tucker*, 1 H. Bl. 90, it was held that the plaintiff could recover from the defendant for money paid to the use of the defendant under the following circumstances: The defendant, who was possessed of a large estate in Jamaica, left his wife in England out of health and much in need of money. During his absence she died; funeral expenses suitable to the defendant's fortune and station were paid by the plaintiff, her father. The court held

that the plaintiff acted in discharge of a duty which the defendant was under a strict legal necessity of himself performing, and which common decency required at his hands; and that plaintiff was, therefore, entitled to recover.

In *Ambrose* v. *Kerrison*, 70 Com. Law, 776, 10 C. B. 776, the defendant and his wife had separated. On the death of the wife, the plaintiff, who was distantly connected with the deceased, defrayed the funeral expenses, not knowing where the husband resided. In the action brought to recover money paid to the defendant's use, it was objected that the plaintiff could not recover because he was a volunteer. It was held, however, that he was entitled to recover the money so paid.

In *Bradshaw* v. *Beard*, 12 C. B. (N. S.) 344, the defendant and his wife had separated, the wife leaving the defendant in consequence of a quarrel, going to the house of the plaintiff, her brother, about a mile distant from her husband's home, which he still continued to occupy. She continued to reside with her brother till her death. On her death, the plaintiff, without communicating with the defendant, employed an undertaker to bury her. Although plaintiff did not communicate with the defendant, the defendant knew of his wife's death, and did not in any way interfere. It was held that the plaintiff could recover the money so expended as money paid to the use of the defendant. These cases were of course decided upon the proposition that a duty devolved upon the respective defendants; that from this duty sprung a legal obligation, and from this obligation the law implied a promise to the person or persons who incurred expense in discharge of such duty.

In *Force* v. *Haines*, 17 N. J. L. 385, the plaintiff sued the defendant to recover for services rendered in the following circumstances: The defendant had loaned a slave to the plaintiff. At the expiration of the period of hiring, the plaintiff tendered the slave to the defendant, who refused either to accept the slave, or to be accountable for maintenance, the

slave not being able to care for herself because of physical infirmities. The plaintiff received and maintained her for a number of years. It was held that, notwithstanding the law imposed upon the defendant an obligation to maintain his slave, the plaintiff could not recover for the services so rendered. The ground upon which this decision was based seems to have been that there was no urgent necessity requiring the plaintiff to act in the premises, for the reason that the overseer of the poor would, upon application, have compelled the defendant to discharge his duty.

In *Dunbar* v. *Williams*, 10 Johns. 249, the plaintiff sued to recover for services rendered in attendance as a physician upon a slave belonging to the defendant. It appeared that the slave concealed from the defendant, his master, the fact that he was ill, and applied to the plaintiff, who cured him. As the defendant did not know of the illness of his slave, the services were rendered without the consent of the defendant. Furthermore, the sickness was not of the character requiring the slave to apply to the plaintiff without first consulting the wishes of his master. It was held that the plaintiff could not recover. In denying the plaintiff's claim, the court said: "But the case of the slave in the present instance was not one that required instant and indispensable assistance. We are to presume that the master was accessible and both able and willing to grant the requisite aid. The service was voluntary on the part of the defendant below. It was not a case *in extremis;* and if the plaintiff did not choose to apply to the master, or to take care that his assent was obtained, the service must be deemed gratuitous."

The learned author on Quasi Contracts points out the difference in the case just quoted and the case of *Cunningham* v. *Reardon*, 98 Mass. 538, where it was held that the plaintiff, who buried the wife of the defendant, who had been compelled to leave him because of his cruelty to her, and whom he had refused to support, could recover from the defendant expenses incurred by him in the burial of the

wife, though he gave no notice to the defendant of his wife's death, notwithstanding that notice might have been given. In the opinion in this case it is said: "Nor is any notice to him requisite, in order to charge him for her funeral expenses, any more than for necessaries to sustain life. The burden is on the plaintiff in either case to prove the existence of the necessity, that the husband has failed to make provision for it. But when this is established, nothing more is needed to create the liability; and it would seem to be an idle ceremony to give notice of his wife's death to a man who had refused her the means of sustaining life." The principle runs through the decisions that to charge a defendant for services rendered in the discharge of an obligation which the defendant should have performed, the plaintiff must establish a necessity for his, the plaintiff's action. Further citations are not deemed necessary.

There is a class of cases where the plaintiff rendered service in the preservation of the defendant's property. Of this class of cases Keener on Quasi Contracts says, at page 354: "If, however, when the service was rendered, it was the intention of the plaintiff to receive compensation for the service rendered, it would seem that the plaintiff could, in no sense, be said to be an officious volunteer in charging the defendant for the preservation of property which would have been destroyed but for his intervention. It must be admitted, however, that the right of recovery is denied by the weight of authority." The author in this connection cites *Bartholomew* v. *Jackson*, 20 Johns. 28, in which plaintiff sought to recover for work and labor rendered under the following circumstances: Plaintiff owned a field in which the defendant had a stack of wheat which he had promised to remove in season to allow the plaintiff to prepare the ground for the fall crop. The time for the removal having arrived, plaintiff sent a messenger to defendant requesting him to remove the wheat as he wished to burn the stubble the next day. The message was delivered in the absence of the de-

fendant to his son, who answered that he would remove the wheat by 10 o'clock the next day. Plaintiff waited till that time, and then set fire to the stubble in a remote part of the field; the wheat not having been removed, the plaintiff, to save the same from destruction, the fire spreading more rapidly than he had expected, removed it himself. It was held that plaintiff was not entitled to recover. In the course of the opinion the court said: "The plaintiff performed the service without the privity or consent of the defendant; and there was, in fact, no promise, express or implied. If a man humanely bestows his labor, and even risks his life in voluntarily attempting to preserve his neighbor's house from destruction by fire, the law considers the service rendered as gratuitous, and it, therefore, forms no ground of action." The learned author suggests that if the foregoing decision be taken as holding as a rule of law that no recovery can be had in this class of cases, regardless of the intention of the plaintiff at the time when the services were rendered, that the decision goes too far. While conceding the truth of the general proposition that the law gives each individual the right to select his own creditor, and that no one shall be allowed to thrust his services upon another, the author contends that this rule has no application to a case where, because of public interest involved, the law imposes upon a man an obligation to maintain life.

In *Chase* v. *Corcoran*, 106 Mass. 286, the plaintiff, while engaged with his own boats, found the defendant's boat adrift, badly damaged and in danger of being destroyed. The plaintiff secured the boat, and advertised the finding of it, but receiving no inquiries for it kept it for a long period, and made repairs necessary for its preservation. The defendant afterwards claimed the boat, and the plaintiff refusing to surrender it without receiving compensation for the expenses which he had incurred, defendant recovered the same in an action of replevin. Plaintiff then sued to recover his expenses; it was held that he could recover. It

will be noticed that the finder of the boat made an effort to discover the owner before he incurred the expense of repair.

From the authorities cited, we think it may fairly be deduced that one rendering service for another, in which the interests of the public are not involved, may, when the benefit of such service is enjoyed, recover the reasonable value of such service from the person who receives the benefit, although such services are rendered without the knowledge of the beneficiary. But, from the authorities, it is also clear that there must exist a necessity for the rendition of the services without entering into a contract, or there must exist such circumstances as imply an obligation to pay therefor. This view is in line with the proposition that one may not force his services upon another, and that one has a right to select his creditor.

The complaint alleges that the services rendered by appellee were necessary; that the benefit to appellant would have been lost but for such services. No facts are stated showing the necessity for the services, and that the benefit to appellant would have been lost. These averments are conclusions of the pleader. The allegation that appellant ratified the acts of appellee means only that appellant adopted the acts of appellee. It does not mean that appellant promised to pay appellee.

In *Minnich* v. *Darling*, 8 Ind. App. 539, the court says, at page 544: "Ratification means adoption of that which was done for and in the name of another." The exact language of the complaint is "ratified the acts of the plaintiff, to wit, the filing of the claim for a part of said fund," etc. The word must be interpreted in the sense which will be in harmony with the theory of the complaint as averred by counsel for appellee. In accordance with that theory, it can not be said to be a ratification of a contract, because it is the theory of appellee that there was no contract, and that the liability of appellant is due alone to the fact that

the acts of appellee were adopted by appellant.   Upon the subject of acceptance of services, 14 Am. & Eng. Ency. of Law, p. 770, says: "The mere acceptance of services rendered by another without the request of the party to be charged, and without any subsequent promise to pay for the same, creates no obligation to pay, even though the services rendered be beneficial to the person accepting them.   There must be either a previous request or a subsequent promise, express or implied, to create a liability."   Many cases are cited in support of the text.

In *Warring* v. *Hill*, 89 Ind. 497, our Supreme Court, at page 500, thus states the rule: "It is an elementary rule that no one can be held to pay for services or property unless there is an express or implied promise.   One can not voluntarily render services for another and afterwards compel payment.    There must be a request, and either an express agreement to pay or circumstances from which a promise can be implied."   See, also, *Taggart* v. *Tevanny*, 1 Ind. App. 339.   In *Rives* v. *Patty*, 74 Miss. 381, 20 South. 862, it is said:   "The relation of attorney and client is created by contract, and we are not aware of any principle of law or equity which would justify the imposition of attorney's fees upon litigants who have not assumed liability thereof, either because they have other counsel of their own selection, or because they have elected to employ no counsel, and take the chances of success in the courts without representation of lawyers.   It appears to us that it is a dangerous precedent for litigants, however advantageous to lawyers, if we should hold that counsel may intervene to protect the interests of persons who have not signified any desire for the services of counsel, and, upon success crowning the efforts of such counsel, impose liability upon the unwilling litigant to pay attorney's fees."   In the foregoing is cited with approval the following from the opinion of the court in *Roselius* v. *Delachaise*, 5 La. Ann. 481, "However valuable the services of the plaintiff may have been,

which do not appear to be underrated by the defendant herself, yet as she did not employ him or authorize any one else to employ him in her suit, the present action can not be sustained."

In *Tascott* v. *Grace*, 12 Ill. App. 639 (a suit to recover attorney's fees), the lower court instructed the jury that if the plaintiff performed services for the defendant in the collection of a claim and the defendant accepted such services and that the services were of benefit to the defendant, that there would be an implied contract to pay for such services. The Appellate Court held that the instruction was erroneous, and reversed the judgment of the trial court.

In *Chicago, etc., R. Co.* v. *Larned,* 26 Ill. 218, it was held that an attorney cannot recover for services rendered as such unless he can show an employment or retainer, saying: "Whatever there may be in this claim in a moral point of view, it would be a most dangerous precedent to hold, that because the defendant had sat silently by and let counsel employed by another argue a cause, which, if won, would secure his interest, therefore he agreed to pay the counsel in proportion to the benefit thus received."

A necessity is not shown for the rendition of the services. It will not be presumed that appellant was not accessible and that a contract of employment could not have been entered into. Appellant, as shown by the complaint, received from the county only what it had paid as taxes for the purchase of toll roads, and which the board of commissioners had directed to be returned to it. It only received its own. In the absence of the statement of certain facts from the complaint, which we have indicated, we can not agree with counsel for appellee that appellant has unjustly enriched itself at the expense of appellee. Admitting, for the sake of argument, that services rendered without contract, as claimed, upon the theory for which appellee contends, may be recovered, still, under the authorities cited, and others referred to by appellee, the complaint does not bring his

claim within the conditions required in that class of cases. To consider the foregoing authorities further, and other of the cases cited in the briefs of counsel, would unduly extend the length of this opinion. Appellee, without the request or knowledge of appellant, rendered the services for which he sues. Appellant was entitled to an opportunity either to employ appellee or some one else. In electing to render the services in question, appellee trusted to the liberality of appellant. The court erred in overruling the demurrer to the complaint. The consideration of the other specifications of the assignment of errors is unnecessary. The judgment is reversed, with instruction to sustain the demurrer to the complaint.