## DIECKMAN, ADMINISTRATRIX, v. LOUISVILLE AND SOUTHERN INDIANA TRACTION COMPANY.

[No. 6,799. Filed November 23, 1909. Rehearing denied March 11, 1910. Transfer denied May 11, 1910.]

1. NEGLIGENCE.— *When Question for Jury.*— *When Question for Court.*—Where the facts are admitted and but one inference can reasonably be drawn therefrom, the question of negligence is for the court. otherwise, for the jury. p. 15.

2. RAILROADS.—*Street.*—*Interurban.*—*Signals.*—The running of an interurban car on an east-bound track, at the rate of twenty-five miles an hour, without giving any signal at a highway crossing, may constitute negligence, where many heavily-laden street railroad cars are passing at rapid intervals on the west-bound track, and where plaintiff's decedent attempted to cross the tracks at such highway, such street-cars necessarily obstructing to a large extent his view of the east-bound track. p. 15.

3. RAILROADS.— *Interurban.*— *Highway Crossings.*— *Contributory Negligence.*—A pedestrian who in returning from a ball park at-

tempted to cross the defendant interurban railroad company's west-bound track between two cars situated in a long line of moving cars, and who was caught by a rapidly-moving interurban car on the east-bound track, is not guilty of contributory negligence as a matter of law, the cars on the west-bound track necessarily obstructing the vision of the other track.  p. 15.

4.  RAILROADS.— Travelers.— Sudden Perils.— Contributory Negligence.—A pedestrian who in attempting to pass over a highway between moving cars on one track, was suddenly confronted with one on the other track, thus placing him in a position of sudden peril, is not chargeable with contributory negligence in failing to avoid the peril which, on mature reflection, he might have avoided.  p. 17.

5.  APPEAL.— Wrongful Direction of Verdict.— Insufficient Complaint.—Where a verdict was wrongfully directed for the defendant, a reversal will be ordered regardless of the sufficiency of the complaint, unless it could not be amended so as to state a cause of action.  p. 18.

6.  RAILROADS.— Negligence.— Complaint.— Allegations.— Descriptions.—A complaint alleging that defendant interurban railroad company "negligently * * * caused * * * an interurban car * * * to be run against and upon" plaintiff's decedent, thereby killing him, states a cause of action, a description of the surroundings being unnecessary, and uncontrolling, if alleged.  p. 19.

7.  NEGLIGENCE.—Complaint.—Proof.—It is sufficient to prove the substance of a charge of negligence.  p. 20.

8.  NEGLIGENCE.— Contributory.— Complaint.— The complaint in a negligence case need not negative contributory negligence.  p. 21.

From Clark Circuit Court; H. C. Montgomery, Judge.

Action by Ella Dieckman, as administratrix of the estate of George W. Dieckman, deceased, against the Louisville and Southern Indiana Traction Company.  From a judgment for defendant, plaintiff appeals.  Reversed.

Evan B. Stotsenburg, John H. Weathers and Alexander Dowling, for appellant.

George H. Voigt and Charles D. Kelso, for appellee.

RABB, J.—Appellant's decedent was killed in a collision with one of appellee's traction cars, while undertaking to cross appellee's track.  This action was brought by appellant to recover damages for the death of her decedent, which

is alleged to have been occasioned by the negligence of appellee.

The case was put at issue, a jury trial had, and at the conclusion of the evidence the court, upon appellee's motion, gave to the jury a peremptory instruction to return a verdict in favor of appellee. The giving of this instruction presents the only question to be determined by this court.

Appellee maintains an amusement park in the suburbs of the city of New Albany, for the purpose of enhancing the profits of its business. Appellee's tracks extend from said city, through this park, and on east to the city of Jeffersonville. From the city of New Albany and through the park the road runs east and west and is double tracked, the north track being used for its cars going west, and the south track for those east bound.

The cars used for the accommodation of appellee's patrons who visit the park are ordinary city cars. Besides these, appellee runs large interurban cars over its road, for the accommodation of passengers traveling between cities and towns on its line.

On the occasion of the accident, by which appellant's decedent lost his life, a game of baseball had attracted a large crowd to appellee's park, and it had, for the accommodation of the crowd in returning to the city when the game was over, a large number of summer street-cars in waiting at the park. At the close of the game the crowd left the grounds, some of them taking the cars, and a great number of them walking down the track toward the city. The cars, as they were loaded, were dispatched toward the city in rapid succession.

The evidence in the case would have justified the jury in finding that the decedent, after the ball game, left the ball grounds, with the crowd, and walked west along the north side of appellee's track, until he reached a highway crossing; that when he arrived at the crossing, one of ap-

pellee's cars approached from the park, loaded with passengers, who not only occupied all the seats, but also stood on the running-board; that decedent waited until this car passed, and then stepped on the north track; that before doing so he looked west for the approach of a car from that direction; that he also looked west when about the middle of the north track; that at the time decedent started across the track a heavy interurban car was approaching the crossing from the west, at the rate of from twenty to twenty-five miles an hour, which car the decedent was unable to see at the time on account of the passing of west-bound cars on the north track; that no signals were given by the interurban car of its approach to said crossing, and decedent was not aware of its approach until he was in the act of stepping on the south track; that he could not have seen the car until after he crossed the north track; that there was a space of six feet and ten inches between the two tracks, and the space between the interurban car going east, and the city car, loaded as it was, going west, was from eighteen to twenty-four inches; that at the time the decedent crossed the north track a car coming from the park toward the city was but a few feet away; that a large number of city cars were going from the park at a distance of twelve or fifteen feet apart; that decedent had time to cross the track between the cars on that track in safety, but when he crossed the north track, and arrived at a point where he could have seen, had he looked, the approach of the interurban car from the west, it would have been perilous for him either to stand still or to attempt to recross the north track in front of the car coming from the park; that just as he stepped on the south track, some one behind him called to him to "look out;" that he glanced east toward the car coming from the park, and then west, attempted to step back, slipped and fell, was run over by the interurban car and instantly killed.

The instruction complained of is sought to be justified

on the ground that the evidence fails to show that appellee was guilty of negligence, and that it affirmatively shows the decedent to have been guilty of contributory negligence in attempting to cross appellee's tracks without looking for the approach of a car from the west.

The question of negligence of either appellee or appellant's intestate is primarily for the jury. It becomes a question of law for the court only when there is no dispute in the evidence, and but one inference can reasonably be drawn therefrom. In this case, the jury might well have determined that the appellee was guilty of negligence in running its cars at a speed of from twenty to twenty-five miles an hour while passing its cars and while the crowd was coming from the park. There was evidence also justifying a finding that the interurban car was not only run at what, under the circumstances, was a negligently high rate of speed, but that appellee's servants were guilty of negligence in failing to sound proper warning signals of the approach of the car to the crossing. The jury might have concluded that, under the circumstances shown, ordinary care required the servants of appellee, when approaching this crossing, to sound the danger signal, by its whistle and gong, and such conclusion would not have been unreasonable. *Pennsylvania Co.* v. *Krick* (1874), 47 Ind. 368; *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, 51 Am. Rep. 761; *Indianapolis, etc., R. Co.* v. *Hamilton* (1873), 44 Ind. 76.

It is insisted that appellant's decedent was guilty of negligence proximately contributing to the accident which resulted in his death, in attempting to cross either track of the railroad until he was assured that no car was approaching on the south track from the west, and particularly in failing to look to the west after crossing the north track, and when he was in a position where the evidence shows he could have seen the car that struck him before he was on the track in front of it, and we are cited

16    APPELLATE COURT OF INDIANA,

Dieckman *v*. Louisville, etc., Traction Co.—46 Ind. App. 11.

to many authorities holding that one approaching a railroad crossing is bound to know of its danger, and to use his senses of sight and hearing to protect himself therefrom; that he would be conclusively presumed to see that which was in plain sight, had he used his sense of sight, and to hear that which he could have plainly heard, had he used his sense of hearing, and that if by the proper use of his senses he might, under the circumstances, have protected himself from the injury complained of, his failure so to do will be negligence.

The authorities to which we are referred are fully recognized, but they are not applicable to the facts of this case. Here was a long procession of street-cars, following one another from the park to the city, with time enough intervening between them for decedent to cross the track without danger of collision with them. He approached the street crossing where the accident occurred with his face to the west, thus giving him a partial view of the south track, west of the crossing, between the passing cars on the north track. He did look west before he started to cross either track, and thus had a partial view of the south track. He heard no sound or signal of an approaching car on the south track, and from appearances as they presented themselves to the senses of decedent at the time, the jury might well have found that he had good reason to believe that no car was approaching on the south track, and that he was not guilty of negligence in crossing the north track. It is true that after he crossed the north track he could then, by looking west, have seen the car that struck him, but at that point he was already in a place of peril. A car was approaching him on each track. The space between the two cars, as they would pass each other, was so narrow as to afford no safety, and so, whatever decedent did, he was in peril. He was brought to a position of peril by the negligent acts of appellee, and the rule invoked by appellee does not apply to circumstances of this kind. If it were granted that he could

have stopped after crossing the north track, and have been safe, a different question would be presented.

If one acts naturally in a case of sudden and instant peril, put on him by another, and is injured, he is not guilty of negligence, although afterwards, out of the pres-

4. ence of danger, with time to reflect, and in the light of all known facts, it may appear that another course of conduct might have led to his escape. *Woolery* v. *Louisville, etc., R. Co.* (1886), 107 Ind. 381, 57 Am. Rep. 114; *Clarke* v. *Pennsylvania Co.* (1892), 132 Ind. 199, 17 L. R. A. 811; *Indianapolis, etc., R. Co.* v. *Carr* (1871), 35 Ind. 510; *Indianapolis, etc., R. Co.* v. *Stout* (1876), 53 Ind. 143; *Pennsylvania Co.* v. *McCaffrey* (1894), 139 Ind. 430, 29 L. R. A. 104; *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25; *Eichel* v. *Senhenn* (1891), 2 Ind. App. 208; *Lake Erie, etc., R. Co.* v. *McHenry* (1894), 10 Ind. App. 525; *Peirce* v. *Ray* (1900), 24 Ind. App. 302; *Pittsburgh, etc., R. Co.* v. *Carlson* (1900), 24 Ind. App. 559; *McIntyre* v. *Orner* (1906), 166 Ind. 57, 4 L. R. A. (N. S.) 1130, 117 Am. St. 359.

Among the authorities cited by appellee are some cases which hold that when a person passes from behind a car going in one direction, to a track upon which cars are running in an opposite direction, without first looking in each direction for an approaching car upon the other track, he will be held guilty of negligence as a matter of law. It will be observed, however, that in all such cases the injured person held to have been negligent might, after crossing the first track, have remained standing in perfect safety before advancing upon the second track. He was threatened with no danger from cars approaching upon the track which he had crossed. The condition of peril in which appellant's decedent in this case was placed clearly distinguishes it from the cases cited.

Conceding that appellant's decedent was not guilty of negligence up to the time he crossed the north track of ap-

pellee's road, and conceding, as we think the jury may have found, that when he reached this point he was in a position of great peril, where danger confronted him whether he stood still, attempted to retrace his steps across the north track, or proceeded forward across the south track, we think it should have been left to the jury to determine whether he was guilty of negligence in the course he pursued.

Judgment reversed, with instructions to the court below to grant a new trial.

## On Petition for Rehearing.

RABB, J.—Appellee in its petition for rehearing earnestly insists that the court in deciding this case overlooked the point made in appellee's brief, that the court below erred in overruling appellee's demurrer to appellant's complaint, and that the judgment should have been affirmed for this reason, and insists upon a decision of this question.

No cross-errors were assigned by appellee calling in question the ruling of the court below upon the demurrer to the complaint, and no error committed by the court below against appellee in ruling on the demurrer to the complaint, can be made to offset an error committed by the court against appellant in giving a peremptory instruction to the jury to return a verdict in appellee's favor.

If the complaint was so defective that no amendment could make it good, this would afford proper ground for an affirmance of the judgment, but error of the court in its action upon the demurrer will not. *McCole* v. *Loehr* (1881), 79 Ind. 430; *Town of Greendale* v. *Suit* (1904), 163 Ind. 282; *Davis & Rankin, etc., Mfg. Co.* v. *Booth* (1894), 10 Ind. App. 364; *Goodman* v. *Niblack* (1880), 102 U. S. 556, 26 L. Ed. 229.

Appellee insists that the complaint should be construed as though the averments contained therein, descriptive of

the surroundings at the time the accident happened,
6.  and of the speed at which it averred the car was
being run at the time, were the substantive and controlling averments of the pleading, and it is contended that these descriptive averments contradict the general charge of negligence, and show the decedent to have been guilty of contributory negligence, and that for this reason the complaint was bad.  This is an erroneous view.

The action was for negligence, and there is a general charge contained in the complaint that "defendant negligently * * * caused * * * an interurban car * * * to be run against and upon George W. Dieckman," thereby killing him.  The negligent running of the car is the gist of the action, and whether it ran at a speed of eighteen miles per hour, or five miles, or fifty miles, is not material, nor are the other incidental facts averred.  The complaint would have been good had all the descriptive and incidental facts been stricken out, and it stood upon the general charge that appellee negligently ran its car against appellant's decedent, thereby killing him.  This would furnish the predicate for proof of all incidental facts and circumstances both of commission and omission, which would fairly tend to establish the primary fact charged, whether such incidental facts and circumstances were or were not set forth specifically in the complaint.  *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, and authorities cited; *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, and authorities cited.

The case of *Indianapolis St. R. Co.* v. *Marschke, supra,* was an action very similar to this one, and was brought by appellee against the Indianapolis Street Railway Company, for an injury received at a public street crossing.

The complaint contained no specific averments that would bring the case within the last clear chance doctrine, but there was, as here, a general charge of negligence, and there were, as here, specific characterizations of the act of de-

fendant in running its car at a high rate of speed, and a failure to give proper signals. The court gave to the jury an instruction authorizing it to return a verdict in favor of the plaintiff, if the evidence made a case under the rule of the last clear chance. The giving of this instruction was relied upon as an error entitling defendant to a reversal.

The court said, in deciding this question: "It is claimed that the trial court submitted to the jury a question which was outside of the issues, in instructing with reference to a liability based on the hypothesis of a failure to exercise reasonable care after it became apparent to the motorman that a collision was likely to occur. This, in substance, is the doctrine of last clear chance. The complaint does, in its preliminary allegations concerning negligence, characterize as negligent a running at a high speed and a failure to sound the gong, but the averment concludes with a charge of negligence in running the car upon and against plaintiff's buggy, thereby injuring her. We are of opinion that the complaint should not be construed on the theory that it required all of the more specific charges of negligence to be proved to make out a case. The specific characterizations of the complaint may give a more vivid idea of the manner in which it was claimed that the accident occurred, but, after all, the whole thing, in substance, is a charge that the defendant negligently ran its car into the plaintiff's buggy. Even at common law it was the rule that it was enough if the substance of the issue was exactly proved. * * * In such a case as this the injury caused by the wrongful act or omission of the defendant is the gravamen of the action. * * * We are of the opinion that appellee was entitled to recover if the jury found that the hypothesis which the instruction contained was maintained by the evidence. As was said in *Robbins* v. *Diggins* (1889), 78 Iowa 521, 43 N. W. 306, in considering the propriety of an instruction to the effect that

the plaintiff must prove the allegation of negligence as laid: 'The defendants are liable if they negligently ran upon and injured the plaintiff. It was not necessary to show that the speed was "furious." ' "

In the case of *Knoefel* v. *Atkins, supra,* it is said, speaking with reference to complaints to recover for negligence: "It is not, generally speaking, necessary in actions for negligence that the complaint set forth the circumstances which tend to show negligence. It is sufficient to allege generally the doing of the act that led to the injury, and that it was negligently done." And in the same case the following is quoted, with approval, from *Davis* v. *Guarnieri* (1887), 45 Ohio St. 470, 484, 15 N. E. 350, 4 Am. St. 548: "The wrongful act complained of—the act which led to the injury—was carelessly selling and delivering to the plaintiff a deadly poison instead of the harmless medicine he called for.  *  *  *  The allegation in a pleading that the party complained against negligently committed the particular act which led to the injury whose redress is sought, furnishes the predicate for the proof of all such incidental facts and circumstances, both of omission and commission, as fairly tend to establish the negligence of the primary fact complained of."

Appellant was not required to show by the averments of her complaint that her decedent was free from negligence contributing to his injury, nor was she required to set out in detail all the circumstances and conditions attending the accident, and the court cannot say, as a matter of law, from the facts averred in the complaint, and what might have been shown in the evidence, under the issue, that decedent was guilty of contributory negligence.

The complaint, we think, was not only sufficient to withstand attack for the first time in this court, but to withstand demurrer.

It is insisted that the court's statement of the facts as they might have been found by the jury is not correct. We

have again carefully gone over the evidence as it appears in the record, and it fully justifies the statement made by the court, and upon which the decision of the court is predicated.

Petition for rehearing overruled.