## COVER *v.* COOKERLY, ADMINISTRATRIX.

[No. 11,101. Filed January 26, 1922.]

WORK AND LABOR.—*Services Rendered Married Daughter During Sickness by Parents.—Husband's Liability.*—While the husband is bound to support his wife, her parents cannot recover for services rendered to her when she was brought to their home to be cared for while ill where there was no thought or suggestion of pay at the time the services were rendered.

From Wells Circuit Court; *Frank W. Gordon,* Judge.

Action by Malissa Cookerly, administratrix of the estate of William Cookerly, deceased, against Homer Cover. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Eichhorn & Edris,* for appellant.

*Charles E. Sturgis* and *Robert W. Stine,* for appellee,

NICHOLS, J.—The error presented and relied upon for reversal is the action of the court in overruling appellant's motion for a new trial, under which it is contended that the verdict is not sustained by sufficient evidence, and that it is contrary to law. .

The complaint filed in this case charges the appellant for board and lodging and services rendered to the appellant's wife for a period aggregating seven weeks and five days. It also charges the appellant for board and lodging furnished to him at certain intervals during this seven weeks and five days which aggregated four weeks. There was a verdict of $163 for appellee from the judgment on which this appeal.

The undisputed facts here involved are substantially as follows: The daughter of appellee administratrix and her husband was married to appellant March 28, 1918. Immediately following their marriage they went to live on the farm owned by the parents of appellant. Early in January, 1919, appellant, the son-in-law of appellee administratrix and her husband, because of the sickness of his wife brought her to the home of her parents and left her for a period of time which the evidence discloses was approximately two weeks. It appears that she was brought there principally for the purpose of regaining her normal health. The mother, appellee herein, who was nursing away from home at the time came home and cared for her daughter. After being there for about two weeks she was believed to have recovered considerably from the illness with which she was afflicted at the time she was taken there, and was removed again to her own home and that of her husband. She remained there for about a week when discovering that she was worse, the husband, appellant herein, again took her to the home of her parents where she remained until March 10, 1919, at which time she

was taken to the Huntington hospital and remained there for a few days when she died. A part of the time while his wife was at the home of her parents, appellant was there with her, and as appellee says, "boarded and lodged" there. Her corpse was removed from the hospital to the home of her parents which, the evidence shows, was done at the request of her parents and the consent of her husband, and the funeral was held in the home of her parents at Markle, Indiana.

The length of time that the daughter was in her parents' home, and that her husband was there with her is somewhat indefinite because, as appellee says, she did not keep any dates for the reason that she did not think anything about charging either for caring for her daughter, or for the board and lodging of her son-in-law, appellant herein. Appellee's husband testified substantially to the same effect. Appellee says that when her daughter was taken away the first time, "I told her that she had a home at my house as long as I had one." Appellant testified that neither of his wife's parents said anything to him about having a bill against him or about paying for any services that had been rendered his wife, their daughter, before he was notified by their attorney. There is nothing in the record that indicates that appellant had in any way mistreated his wife, or that he had neglected her, or that the relations between the parties were not cordial. We are impressed from the whole record, none of which is disputed, that we have a case of a daughter in failing health going back home for a mother's care, the husband manifesting his concern because of her condition by staying with her as much as half of the time, and that the matter of compensation was wholly an afterthought.

The principle that is controlling here is expressed in Page, Contracts §1446, as follows: "If A renders services for B, and A does not intend at the time of their

rendition to make any change therefor, and B knows of such intention, A can not subsequently, upon changing his mind, recover for such services as upon an implied contract, even if such work was done with B's knowledge or at B's request." Numerous authorities are cited to sustain this principle, including *Hill* v. *Hill* (1889), 121 Ind. 255, 21 N. E. 87; *McFadden* v. *Ferris* (1892), 6 Ind. App. 454, 32 N. E. 107.

In *Warring* v. *Hill* (1883), 89 Ind. 497, it is expressed as follows: "One can not voluntarily render services for another and afterwards compel payment." Other Indiana authorities to the same affect are: *Taggart, Admr.*, v. *Tevanny* (1890), 1 Ind. App. 39, 27 N. E. 511; *Helphenstine* v. *Hartig* (1892), 5 Ind. App. 172, 31 N. E. 845; *Cleveland, etc., R. Co.* v. *Shrum* (1899), 24 Ind. App. 96, 55 N. E. 515; *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988; *Hunt* v. *Osborne* (1907), 40 Ind. App. 646, 82 N. E. 933; *Cauble* v. *Ryman* (1866), 26 Ind. 207.

In *Hunt* v. *Osborne, supra,* the court says: "It is well settled that for services voluntarily rendered by one person for another, with no expectation at the time the services are rendered to charge therefor, there can be no recovery."

In *Cauble* v. *Ryman, supra,* the plaintiff took the decedent who was his mother-in-law into his own home and kept her for a considerable time. During all the time that she lived in his home and he was providing for her, nothing was ever said about paying him for his services, and she never promised to pay him. It was held that he could not recover.

In this case, it is true that the daughter had established her own home, but still, in her extremity she came back home, to her home in which she had grown to womanhood, without a thought on the part of any one that she should receive the services of a hired nurse,

but that she might have only the affectionate care that a mother could give. While there are circumstances under which there should be compensation for such services, we are of the opinion that the circumstances here involved do not present such a case. Ordinarily, public policy and the sanctity of home ties, demand that such services should not be commercialized, but that they should be gratuitous and prompted by reciprocal affection. In so holding, we must not be understood to hold that the husband is not bound to support his wife, both in health and sickness, for this he is required to do, not only in law, but from the standpoint of moral ethics as well, but where, as here, there appears no thought of pay for services while they were being rendered, but only a mutual effort to care for the one who is sick, compensation is not the rule.

The judgment is reversed with instructions to grant a new trial.