CANLER *v.* STATE OF INDIANA

[No. 28,876. Filed April 22, 1953. Certiorari denied U. S. Sup. Ct. October 12, 1953.]

*T. Ernest Maholm,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General, *William T. McClain* and *John Ready O'Connor,* Deputy Attorneys General, for appellee.

EMMERT, C. J.—This is an appeal from a judgment on a verdict which found appellant guilty of murder in the first degree as charged in an indictment, and fixed his punishment at imprisonment for life. When we examined the record we were of the opinion that judgment had not been entered on the verdict, and pursuant to Rule 2-3 of this court we retained jurisdiction of the appeal, and ordered the trial court to enter judgment on the verdict. This has now been done as evidenced by a certified copy of the proceedings now on file here. There is no merit to appellant's objections to this procedure. The only proper assignment of error here is the trial court erred in overruling the motion for a new trial.

The indictment for murder in the first degree was returned by the grand jury of Madison County. Thereafter appellant pleaded guilty thereto. On May 22, 1951, appellant filed a verified petition for a writ of error *coram nobis,* which was sustained by the Madison Circuit Court. Upon his affidavit for change of venue from the county, the cause was venued to the Tipton

Circuit Court where appellant entered a plea of not guilty to the indictment. Counsel was appointed for him as a poor person, and a jury trial was had.

At the conclusion of the State's evidence in chief, the defendant rested without the introduction of any evidence. None of the State's witnesses were impeached, or contradicted in any material respect. The evidence, when viewed most favorably to the State, together with all reasonable and logical inferences properly drawn therefrom, discloses that appellant met Cecil Cromas about 3:00 o'clock P.M. the 4th day of October, 1947, at a tavern in Alexandria where they had some drinks. Appellant had purchased a snap knife and said "he was going to kill somebody," that "he was getting blood-thirsty." About 5:00 o'clock they left the tavern and went to the home of Cromas, who was living with his mother, where they drank some more whiskey. Later they went to the home of Thomas Hill, which was nearby, and after Hill had admitted them they had some more drinks. Cromas became sick and went outside for a short time. When he started back to the shack where Hill resided, he saw Canler come out a window with a bloody knife in his hand and with blood on his hands. The knife was open, and appellant said he had killed the old man on the bed.

The appellant and Cromas then went to various places in Madison County and finally spent the night at appellant's apartment. Next morning Cromas saw appellant have the knife in his hands, and after appellant tossed the knife to Cromas, appellant told him to throw it under the floor lamp. The next day the two went to Louisville, Kentucky, by bus. Thereafter they went to Elizabethtown and Auburn, Kentucky, where they were later arrested and thereafter placed in the county jail. On October 9th state policemen, the cor-

oner of Madison County and police officers from Alexandria returned appellant and Cromas to Alexandria, where appellant orally admitted that he had stabbed Hill several times.

Appellant said Thomas Hill had been talking about his wife who had died about three months previously and "he put him where he could be with his wife." Appellant said to Hazel Cromas, the wife of Cecil Cromas, that Hill said "he wanted to go where Daisy was at and I put him there." At the time the admissions were made to the peace officers, appellant had no counsel, nor had he requested or demanded any. The evidence as to these admissions was admitted without objection. The verdict was sustained by sufficient evidence and it was not contrary to law. There is no error in overruling appellant's motion to peremptorily instruct the jury to return a verdict of not guilty.

The Indiana officers had a warrant for arrest of appellant when they took him into custody in Kentucky, but the record is not clear as to whether appellant signed a waiver of extradition proceedings. Even if appellant had not voluntarily consented to his removal to Indiana it still would not be a denial of due process of law under the Fourteenth Amendment. *Frisbie* v. *Collins* (1952), 342 U. S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541, 545, 546.[1]

---

1. "This Court has never departed from the rule announced in *Ker* v. *Illinois*, 119 U. S. 436, 444, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." Mr. Justice Black in *Frisbie* v. *Collins* (1952), 342 U. S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541, 545, 546.

Nor were the admissions of appellant in the presence of various witnesses made under any inducement, influence of fear produced by threats or intimidation, nor was he under any undue influence of any kind at the time he admitted the facts and circumstances of the murder. Nor was he deprived of due process of law under the Fourteenth Amendment. He has had the benefit, advice and services of competent counsel from the time he entered his plea of not guilty.

Attached to the transcript we find the knife identified as owned by appellant and used by him to commit the murder. Such real evidence is not properly part of the record and should not have been brought here with it. *Bridgewater* v. *State* (1899), 153 Ind. 560, 567, 55 N. E. 737;[2] *Kinghan & Co., Ltd.* v. *King* (1913), 179 Ind. 285, 100 N. E. 1044; *Morgantown Mfg. Co.* v. *Hicks* (1909), 43 Ind. App. 32, 34, 86 N. E. 856; *Slinkard* v. *Wilson* (1952), — Ind. App. —, 105 N. E. 2d 342, 343; Ewbank, Manual of Practice (2d Ed.) §35, p. 71.[3] We have no proper place to keep such items, and since the knife is not properly a part of the record, the Clerk of the Supreme Court is ordered to return it to the Clerk of the Tipton Circuit Court.

2. "In this case an article of clothing of the appellant, the knife with which the homicide was committed, and a knife found in the pocket of the deceased, were attached to the bill of exceptions. Such things have no place in the bill, and should never be brought here with it. Verbal descriptions of all items of evidence of this character are sufficient, and are the only proper methods of bringing such items to the attention of this court." *Bridgewater* v. *State* (1899), 153 Ind. 560, 567, 55 N. E. 737.

3. "It is not contemplated that articles such as iron pipes, guns, articles of clothing, pieces of wood or iron, or other things used in the trial of a cause, as illustrative and explanatory of parol evidence, shall constitute a part of the record on appeal, and they have no place in a transcript. Verbal descriptions of all items of evidence of this character are sufficient, and constitute the only proper method of bringing such items to the attention of a court to which an appeal is taken." Ewbank, Manual of Practice (2d Ed.) §35, p. 71.

We find no error in this record, and therefore the judgment is affirmed.

NOTE.—Reported in 111 N. E. 2d 710.