LINCOLN OPERATING COMPANY *v.* GILLIS.

[No. 29,000. Filed October 21, 1953.]

552

*Slaymaker, Locke & Reynolds, Theodore L. Locke, Hugh E. Reynolds,* and *Emerson Boyd,* all of Indianapolis, for appellant.

*Otto W. Cox,* Indianapolis, and *Hunter J. Von Leer,* of Terre Haute, for appellee.

EMMERT, J.—This is an appeal from a judgment in the sum of $7,500.00. We acquired jurisdiction by transfer from the Appellate Court under §4-209, Burns' 1946 Replacement, because four judges of that court failed to concur. The verdict was for $15,000.00, but the trial court ordered the appellee to file a remittitur in the sum of $7,500.00, or appellant's motion for new trial would be granted. Appellee filed the remittitur, and does not question here the action of the trial court by any cross assignment of errors. The error assigned on appeal is that the court erred in overruling appel-

lant's motion for new trial, which questions the sufficiency of the evidence to sustain the verdict and the giving and refusing of certain instructions.

The complaint was for negligence in causing appellee, while an invited guest at the Lincoln Hotel, to fall in a bathtub, which broke her right kneecap and caused other permanent injuries. The specific allegations of negligence in the complaint which are material for the decision of this appeal are as follows:

"(a) In negligently permitting said bathtub to be, become and remain in a dangerous and unsafe condition in that said bathtub about parts of its bottom and lower sides had a slippery soaplike scum and substance thereon.

. . .

(c) In negligently failing to inspect said bathtub before its assignment to plaintiff's use.

. . .

(f) In negligently failing to clean said bathtub after the previous occupant of said room had left and before assignment thereof to plaintiff.

(g) In improperly cleaning said bathtub in that a soap-like scum and slippery substance accumulated thereon was permitted to remain.
. . ."

The evidence when viewed most favorable to the appellee discloses that appellee and her husband, who was a funeral director in business in Terre Haute, were in Indianapolis attending a convention of funeral directors. They were registered guests at the appellant's hotel, and about 11:00 A. M. appellee went to the bathroom to take a shower. There was a light on in the bathroom, and she disrobed and turned on the hot and cold water. She glanced at the bathtub but did not make any inspection of it. The tub had no rubber mat to stand on, and she stepped in the center of the tub. While the water was running she reached to adjust the shower curtain. As she turned to pull the curtain

her feet "hit something as slick as glass and both feet flew out" before she could touch the shower curtain. Her knee hit the bottom of the tub with a loud noise. She tried to get out of the tub, but the tub was so slick she couldn't get out at first. The substance on the bottom of the tub "was just like grease," "it was scummy and dirty." She could see the substance and could feel it and it got on her hands. She tried several times to get out of the bathtub. Her "hands had white, scummy stuff on them," so did her hip. She had not used any soap before she fell. Then she dragged herself to the telephone and called for help.

She was at once taken by ambulance to the hospital in Terre Haute where an X-ray of the kneecap was taken and an operation was performed. The X-ray disclosed the kneecap was fractured in the middle, and the two parts were separated about an inch. Appellee had been in good health before the accident and had been able to go deer hunting, duck hunting, pheasant hunting, swimming and ride a motorcycle. She had worked for her husband in the funeral home, where she did cosmetic work and hairdressing for the women prepared for burial at the home; she had acted as hostess for her husband, and driven funeral cars for him. For this work her husband paid her a salary of $55.00 a week. The knee was permanently injured, and it is difficult for her to go up and down stairs. She hired another lady to do the cosmetologist work and hired another hostess. Her ability to walk and drive an automobile is limited.

Most of appellant's contentions of error can be disposed of by determining whether appellee was guilty of contributory negligence as a matter of law. In this state we adhere to the rule announced in *Gamble* v. *Lewis* (1949), 227 Ind. 455, 461, 85 N. E. 2d 629, as follows:

"If the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury; but if the facts are not in dispute, or if the facts most favorable to the proponent, together with all reasonable and logical inference that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court. *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 641, 38 N. E. 2d 257; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 24 N. E. 2d 284; *Indianapolis & Cincinnati Traction Co.* v. *Roach* (1922), 192 Ind. 384, 135 N. E. 334; *Indiana Ins. Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003, *supra; Northwestern Transit Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591; *Dieckman* v. *Louisville, etc. Traction Co.* (1909), 46 Ind. App. 11, 89 N. E. 909, 91 N. E. 179; 45 C. J. 1280, §852; 5 Am. Jur. 874, §668."[1]

The statute places the burden of proving contributory negligence on the defendant in a personal ■ injury case. Section 2-1025, Burns' 1946 Replacement, Acts 1899, ch. 41, §1, p. 58.

We agree with appellant that the hotel operator is not an insurer of the safety of its guests. However, the hotel operator has the duty to use due care under ■ the circumstances for the safety of its guests. 32 C. J. 561, §69; 43 C. J. S. 1176 *et seq.*, §22; 28 Am. Jur., p. 578, §56, p. 581, §60. We believe under

---

1. "Likewise, the question of proximate cause is generally a question for the jury to determine, but it may become a question of law for the court under the same circumstances that negligence becomes a question of law. *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 644, 38 N. E. 2d 257; *supra; Anti-Mite Engineering Co.* v. *Peerman* (1943), 113 Ind. App. 280, 286, 46 N. E. 2d 262; *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485; *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 15, 83 N. E. 626; *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944; 5 Am. Jur. 875, §669; 45 C. J. 1320, §879." *Gamble* v. *Lewis* (1949), 227 Ind. 455, 462, 85 N. E. 2d 629.

the facts in this appeal it was a question for the jury to determine if said duty had been violated.

Appellant insists that the appellee owed a duty to inspect the tub before using it, but we cannot say as a matter of law there was any such duty upon the appellee. The room had been cleaned and there were fresh towels in the bathroom. The general rule on negligence in Indiana is that an actor, until he has notice to the contrary, has the right to assume that other persons will exercise due care in their conduct toward him. Until the appellee had notice to the contrary, she had the right to assume that the hotel operator had used due care in seeing to it that the bathtub was not in a dangerous condition. "The invitee has a right to assume, and unless otherwise informed does assume, that the place will be reasonably safe for his reception." Harper, Torts §99, p. 230.

Appellant places great stress upon the holding in *Miller* v. *Shull* (1950), Fla., 48 So. 2d 521. In this case the guest complained that the hotel keeper had "carelessly and negligently failed to remove a slippery substance from the bottom of the tub" causing her to fall. The allegation stated that the substance resembled soap, the exact nature of which was unknown to the plaintiff. The Supreme Court of Florida sustained a demurrer to the complaint, and held as a matter of law the guest was negligent because she should have known "that a small amount of water in a bathtub creates a slippery condition." We are not impressed with the reasoning of this case for several reasons. While it is a matter of common experience that water makes an enamel or porcelain tub more slippery than a dry tub, it is also a matter of common experience that millions of people take baths in such tubs without ever falling or injuring themselves. It is also a matter of common experience that wet soap acts as a lubricant

and makes a wet bathtub much more slippery than water alone.[2]

The rule in Florida is that "on demurrer, the allegations of a declaration must be construed most strongly against the pleader." Page 522. The Indiana rule is in favor of the pleading. I Lowe's Work's Ind. Practice §14.39, p. 565. As was stated in *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 439, 122 N. E. 662, "Under the present liberal rules of pleading it will be unnecessary for us to analyze the complaint in this particular, for the demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Vandalia Coal Co.* v. *Coakley* (1915), 184 Ind. 661, 111 N. E. 426." See also *State ex rel. Tittle* v. *Covington, Etc., Schools* (1951), 229 Ind. 208, 214, 96 N. E. 2d 334.[3] The verdict was sustained by sufficient evidence and was not con-

---

2. "Slipping on loose rugs, in soapy bathtubs can trip and cripple you and other members of your household. Hence, use every precaution in avoiding such hazards." Neuschutz, "5,000,-000 Casualties on the Home Front," (1947), p. 118.

"Falls also arise from slipping in soapy bathtubs, . . .

"Many persons have been killed by falling in bathtubs, which may become quite slippery when covered with soap, especially where the bottom is not flat." Gries and Ford, "Housing and the Community—Home Repair and Remodeling," (The President's Conference on Home Building and Home Ownership) 1932, p. 70.

3. It is apparent from the quotation from *Miller* v. *Shull* (1950), Fla., 48 So. 2d 521, contained on pages 83 and 85 of appellant's original brief, that the Florida Supreme Court originally relied upon the reasoning of *Baltimore & Ohio R. R. Co.* v. *Goodman* (1927), 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167. This case was never followed in Indiana. *Pennsylvania R. R. Co.* v. *Boyd* (1933), 98 Ind. App. 439, 444, 445, 185 N. E. 160; *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 372, 47 N. E. 2d 145. The Supreme Court of the United States strictly limited the Goodman case, and in effect overruled it, in *Pokora* v. *Wabash R. Co.* (1934), 292 U. S. 98, 54 S. Ct. 580, 78 L. Ed. 1149, 91 A. L. R. 1049.

trary to law, and the trial court did not err in refusing to direct a verdict for the defendant.

Instruction No. 22, which was given by the court at the request of appellee, was a so-called "stock instruction" on the question of damages. In part it stated, "in determining the damages to be awarded it will be proper for you to consider, the age of the plaintiff, the condition of her health before the alleged accident, her own pecuniary loss, if any," etc. The appellant asserts it was error to instruct the jury on appellee's "pecuniary loss, if any," for two reasons: (1) §38-103, Burns' 1949 Replacement, prohibited her from contracting with her husband for her services in assisting him at the mortuary, and (2) that there was no evidence that the appellee had sustained any pecuniary loss.

Section 38-103, Burns' 1949 Replacement, Acts 1879 (Spec. Sess.), ch. 67, §2, p. 160, provides as follows:

> "A married woman may carry on any trade or business and perform any labor or service on her sole and separate account. The earnings and profits of any married woman, accruing from her trade, business, services or labor, other than labor for her husband or family, shall be her sole and separate property."

However, it is to be noted that §1 of ch. 63 of the 1923 Acts, §38-101, Burns' 1949 Replacement, provides that "All the legal disabilities of married women to make contracts are hereby abolished, except as herein otherwise provided." This section is the identical language used in §1 of ch. 60 of the Acts of the Special Session of 1881, and neither this Act nor did the Act of 1923 contain any provision whatever limiting the wife's right to contract with her husband. The provisions of §2 of ch. 67 of the prior Acts of 1879, not being incorporated in either subsequent Act

concerning the rights of married women, must be considered repealed by implication. The effect of this construction would not give a married woman a right to recover against her husband or family for any labor for them for which she was under a legal duty to perform, since there could be no consideration for doing an act which she had a legal duty to perform. *Ritenour* v. *Mathews* (1873), 42 Ind. 7; *Shortle* v. *Terre Haute & Indpls. R. R. Co.* (1892), 131 Ind. 338, 30 N. E. 1084. Nor could she recover for labor she does as a volunteer. *Warring* v. *Hill* (1883), 89 Ind. 497; *Cover v. Cookerly, Admx.* (1922), 77 Ind. App. 432, 133 N. E. 754. We cannot think the Legislature by the 1923 Act removing all legal disabilities to enter into contract was unaware of the growing tendency to give married women all possible freedom to contract. A married woman's legal duty to her husband and her family does not require her to work in his mortuary, any more than she would have the duty to work in his filling station, his garage, his mill, his machine shop, his store, or his office. There is no question here about her services not being voluntary, for her husband was paying her a weekly salary.

Assuming, without deciding, that there was no evidence in the record that appellee had sustained any pecuniary loss, we still do not believe the giving of this stock instruction was prejudicial error.

In *McClure* v. *Miller* (1951), 229 Ind. 422, 428, 98 N. E. 2d 498, this court held a similar instruction concerning "loss of income, if any," not prejudicial error if no loss of income was proved.[4]

---

4. "This instruction also advised the jury that it might include in the damages assessed 'any loss of income, if any.' Appellant contends that this was error because there is no evidence of any loss of income. The instruction by its wording avoids the objection by using the words 'if any.' If no loss of income was proved under this instruction, the jury could not include such damages in its verdict. As worded the jury must have understood that it might include loss of income, only if there was some proof

In view of the general economic conditions, chiefly noted for high prices and cheap money, the seriousness of appellee's permanent injury and her pain and suffering, we cannot say as a matter of law the $15,000 verdict was based upon prejudice or passion, or evidence not in the record.

We find no error in the giving or refusing of any other instruction in this record.

There was conflicting evidence as to whether or not the bathtub had been cleaned prior to the time the appellee sustained her injuries. Attached to the transcript we find a box of material identified as a cleaner, which appellant contended had been used to clean the tub. Of course this has no proper place with the record here. The Clerk of the Supreme Court is ordered to return it to the Clerk of the Superior Court of Marion County. *Canler* v. *State* (1953), 232 Ind. 209, 111 N. E. 2d 710.

The judgment is affirmed.

Gilkison, J., not participating.

Bobbitt, C. J., concurs in result.

NOTE.—Reported in 114 N. E. 2d 873.

of such loss. See 'IF,' 31 C. J., p. 238." *McClure* v. *Miller* (1951), 229 Ind. 422, 428, 98 N. E. 2d 498.