CASE 22.—SUIT BY S. P. CLARK AND OTHERS AGAINST
        JOSEPH S. PEPPER'S ADMINISTRATOR FOR CON-
        TRIBUTION.—February 23.

# Clark, &c., v. Pepper's Admr.

Appeal from Fleming Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Wills — Legatees — Contest — Expenses — Contribution.—In a will
    contest by legatees to reduce the share of the executor, one
    of the legatees, a brother of the executor, did not contest the
    will, but accepted the fruits of the contest.   When the suit
    was begun, he arranged with the executor's attorneys that
    they would represent him in the litigation, but were to charge
    only one fee, which was to be paid by the executor.   No
    pleadings were filed for the brother, and no attorney appeared
    of record for him. The contesting legatees brought suit against
    the brother for contribution to the expenses of the suit.
    Ky. Stats., 1909, section 489, provides that in an action for the
    settlement of estates, if one or more legatees have prosecuted
    for the benefit of others interested with themselves, the court
    shall allow such persons reasonable compensation for their
    trouble and expense; the allowance to be paid out of the
    funds recovered.   Held, That the brother was liable for his
    proportionate share of the expenses; the facts showing that he
    was not represented in the suit, and there being nothing in
    the statute to prohibit equity from adjusting the rights of the
    parties after the distribution of the estate.

J. H. POWER and B. S. GRANNIS for appellants.

The sole ground upon which Joseph Pepper's administrator
hopes to escape liability, under this action, is that the decedent,
Joseph S. Pepper, was represented by counsel, to-wit, John P. Mc-

Clark, &c., v. Pepper's Admr.

Cartney and W. G. Dearing, and having chosen his own counsel and his own course in regard to said litigation, he can not be made liable, in contribution, for attorney's fees and expenses of appellants.

### AUTHORITIES CITED.

Ky. Stats., section 489; Trustee v. Greenough, U. S. Rept. Bk. 26, p. 1157; Central R. R. Co. v. Pettus, U. S. Rept. 28, p. 917; Abert v. Taylor, 37 S. W. 676; Bailey's Admr. v. Barclay, 60 S. W. 377; Louisville Pres. Theo. Sem. v. Botto, 80 S. W. 177; Estill's Trustee v. Francis, 89 S. W. 172.

JOHN P. McCARTNEY for appellee.

All of the proof in the case shows that Joseph Pepper was represented by counsel of his own selection, and appellants can not complain because he did not choose to join with them in their position in the case.

### AUTHORITIES CITED.

Ky. Stats., section 489; Thirlwell's Admr. v. Campbell, Guardian, &c., 11 Bush 163, 167, 168; Estill's Trustee v. Francis, 89 S. W. 174.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Wesley B. Pepper died testate in Fleming county in the year 1897, the owner of a considerable estate. By his will, which was duly admitted to probate, his brother, Enoch S. Pepper, was made executor. He qualified as executor and filed a suit in the Fleming circuit court for the construction of the will. The testator was a bachelor, and his property went to Enoch S. Pepper, his brother, Jos. S. Pepper, and the descendants of two sisters. A litigation ensued in which the children of the two sisters sought to charge Enoch S. Pepper with a large amount of property with which he insisted he was not chargeable as executor, and also insisted upon a construction of the will

which gave him much less of the estate than he claimed. Jos. S. Pepper, although a party to the action, took no sides in it, apparently for the reason that his brother Enoch had made a will which he did not wish changed. The litigation progressed until a judgment was rendered in the circuit court which adjudged against Enoch S. Pepper a large part of the relief which his sisters' children sought against him. He took an appeal to this court, and they took a cross-appeal. On the hearing of the appeal the judgment on the original appeal was affirmed, but on the cross-appeal it was reevrsed, with directions to the circuit court to enter a larger judgment against Enoch S. Pepper than had been entered originally. The judgment was entered and executed. The property received under the judgment went three-eighths to Jos. S. Pepper and five-eighths to the children of the sisters who had made the contest. Joseph S. Pepper received his part of the fruits of the judgment, amounting to a considerable sum. The children of the two sisters, who had made the contest, had spent therein $1,338.50, and they instituted this action against Jos. S. Pepper's estate, he having died, to require him to contribute three-eighths of this sum, or $492. On a final hearing of the case the circuit court dismissed the petition, and the plaintiffs appeal.

The proof taken shows clearly that the expenditures were reasonable and were necessarily made in the prosecution of the litigation against Enoch S. Pepper. It also appears that Jos. S. Pepper received in money and property a large amount which was the fruit of the contest made by the children of the two sisters. It further appears that Jos. S. Pepper did not wish the contest made, preferring to remain on good terms with his brother, Enoch S. Pepper; and

when the suit began he went to his brother's attorneys and made an arrangement with them that they would represent him in the litigation, but were to charge only one fee, and this was to be paid by his brother as executor out of the estate. The attorneys filed no pleading for Jos. S. Pepper. They were not noted of record as representing him. He ·in fact simply remained quiet during the litigation. The attorneys demanded no fee of him. They made a contract for their fee with the 'executor and were paid by him. It is insisted now that as Jos. S. Pepper was averse to the litigation, and was represented by attorneys of his own choosing as stated, he should not be required to contribute to the expenses incurred by the other deviseees, although he has accepted the benefit of their exertions, and has thus received a large sum from the estate of Wesley B. Pepper, which he would not otherwise have gotten. Section 489, Ky. Stats., is as follows: "In actions for the settlement of estates, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, if it shall be made to appear that one or more of the legatees, devisees, distributees or parties in interest have prosecuted for the benefit of others interested with themselves, and have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such person or persons reasonable compensation for such trouble, and for necessary expenses, in addition to the fees and cost; said allowance to be paid out of the funds recovered before distribution, the persons interested having notice of the application for such allowance."

- In Thirlwell v. Campbell, 11 Bush 163, the plaintiff, who owned an undivided interest in certain realty, brought a suit for its sale. The defendants were rep-

resented by attorneys whom they employed, and the
court refused to allow the plaintiffs an attorney's fee
out of the fund, upon the ground that the defendants
had employed and paid attorneys to protect their in-
terest and were not bound to confide their interest to
the counsel selected by the plaintiff or to contribute
to his fee; the facts being that all of the owners of the
property had sought a sale and each had acted
through the attorney of his own choosing. In Dough-
erty v. Cummings (Ky), 50 S. W. 551, 20 Ky. L. R.
1948, where the sole object of a creditor's suit to settle
the estate of a decedent was to secure the payment of
his own debt, it was held that it was not an abuse of
discretion to refuse to allow him as cost his attorney's
fee. In Bailey v. Barclay, 109 Ky. 636, 60 S. W. 377, 22
Ky. L. R. 1244, an heir, who brought a suit against the
administrator for a settlement of the decedent's es-
tate, which involved merely the question of the ad-
vancements made to the different children, and where
each of them was represented by his own attorney,
was held not entitled to have his attorney's fee paid
out of the estate, upon the ground that the services
of his counsel were not for the benefit of all the heirs,
but were in the interest of his client. See, also, Sims
v. Birdsong (Ky.), 59 S. W. 750, 22 Ky. L. R. 1049,
where a similar conclusion was reached upon much the
same ground. On the other hand, in Estill v. Francis,
(Ky.) 89 S. W. 172, where one of the joint tenants, at
considerable expense, had rescued the joint property,
where the other tenant refused to join in the proceed-
ings, but accepted the fruits of the litigation, it was
held that he must contribute toward the expenses
which his co-tenants had thus incurred. The court
said: "The mere fact that he did not want the suit
brought or prosecuted, or was inactive pending its

course, will not relieve his share of the property from its proportion of the common burden, where he subsequently accepts the results of the litigation. He thereby ratified all that had been done in his behalf, as if he had in the beginning expressly authorized it.''

The whole subject was reviewed by this court in Louisville Presbyterian Theological Seminary v. Botto, 117 Ky. 962, 80 S. W. 177, 25 Ky. Law Rep. 2137. In that case Mrs. Irvin had made a will by which she devised large sums to a number of persons. Afterwards she executed two codiciles to the will, the effect of which would have been to greatly reduce the legacies under the original will. Some of the legatees under the original will contested the two codicils, and they were held invalid. Mrs. Cloteal Botto and her son, W. M. Botto, were legatees under the original will. By the codicils their legacies were increased from $50,000 to $150,000. They employed attorneys and resisted the setting aside of the two codicils. After the codicils were set aside, the legatees at whose expense the litigation had been conducted sought contribution from Mrs. Cloteal Botto and her son, W. M. Botto, as well as all the other persons taking legacies under the original will. They resisted the claim, insisting that they should not be made to pay any part of the cost of a litigation which had been conducted against them, and which had taken from them two-thirds of their claim; but this court held that all the legatees under the original will must contribute to the expenses of the contest as all these legacies were protected by the rejection of the codicils. In answer to the argument that the Bottos were losers by reason of the litigation, the court said: ''If the allowance in this case was for services in a suit to recover the trust property from a stranger who had unlawfully taken

it into his possession, there could be no doubt that
equity would require that it should be paid from the
trust.fund. The fact that the wrongdoers were cred-
itors of the estate ought not to shift the burden from
the trust fund to that portion of it which the creditors
were entitled to receive on a pro rata distribution of
it. In either case the services were for the benefit
of the estate, and it should pay for them."

That case is a much stronger one than this, for it
is not claimed here that Jos. S. Pepper lost anything
by the litigation. Counsel for appellee fail to recog-
nize the fact that the statute quoted does not intro-
duce into the law a new principle. It is simply a
statement of a rule of equity which is as old as
equity jurisprudence. A trust fund in equity was
always required to bear the expenses of its admin-
istration, and, when one of several owners at his own
expense recovered a trust fund, he was always al-
lowed his necessary expenses out of what he brought
back. In the common-law books the subject is dis-
cussed under the head of "Costs as Between Solicitor
and Client." In 2 Daniell's Chancery Pleading &
Practice, 1434-1437, it is said: "It has been stated
that the Court of Chancery makes a distinction with
regard to the principle upon which the officer of the
court is to proceed in the taxation of costs, and that
this distinction is marked by the terms of 'costs as
between party and party,' and 'costs as between so-
licitor and client'; the court in the latter case per-
mitting a larger proportion of actual expenditure to
parties holding particular characters than it allows
in the former case. No definite rules' can be laid
down, with reference to the differences between the
costs allowed upon one basis or the other. In gen-
eral, however, in taxations as between party and

party, only those charges will be allowed which are strictly necessary for the purposes of the prosecution of the litigation, or are contained in the tables of fees annexed to the general orders and regulations of the court; while, in taxations between solicitor and client, the party will be allowed as many of the charges which he would have been compelled to pay his own solicitor, as being costs of suit, as fair justice to the other party will permit. It appears to be the general rule of the court that, when personal representatives and other trustees are entitled to costs out of the fund, such costs will be directed to be taxed as between solicitor and client. It is, however, in general only in cases in which there is a fund under the control of the court that such a direction will be given; where there is no such fund, or a bill against the trustee is dismissed, the costs awarded to the trustee will be only the ordinary costs. Where a bill has been filed for the general benefit of creditors, and the estate has proved insufficient, the court will give the plaintiff his costs of the suit out of the fund realized by his exertions as between solicitor and client. Where, in an administration suit by the heir at law, the realty and personalty were insufficient, the heir had his costs as between solicitor and client.''

The subject came before the United States Supreme Court in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, wholly independent of any statute. There the holder of certain mortgage bonds had brought a suit to prevent the misappropriation of the mortgage property and had preserved the fund. In doing this he had spent $60,000 and sought contribution from the other bondholders out of the fund so preserved. The court, after an elaborate discussion, adjudged

him the relief sought. Among other things, it said: "It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority that, where one of many parties having a common interest in a trust fund at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." The same conclusion was reached in the subsequent case of Central Railway Company v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915.

We see nothing to take this case out of the rule laid down in the cases cited. Jos. S. Pepper was not in any substantial sense represented by attorneys of his own choosing. He paid nothing for attorney's fees, and was not expected to pay anything. The attorneys represented the executor, and they simply agreed to represent Jos. S. Pepper, as he sided with his brother Enoch, the executor. To permit him in such a way as this to throw upon his co-legatees all the cost of the litigation, and at the same time enjoy in full its benefits, would be wholly out of keeping with the equity rule and the practice of courts of equity from the beginning. Equity delights in equality. It looks at the substance, and not at the form, of a transaction. It will not impose a burden which in equity should not be borne, but it will not allow a mere form to affect the operation of its principles. In all the cases where the court refused to allow extraordinary expenses to be paid out of the fund, the ruling was based upon the ground that under the circumstances it was not just that contribution should be ordered. In the case at bar the justice of the claim is manifest, and

there is nothing in the statute to take from courts of equity the power to adjust between the parties the burden of a liigation which is beneficial to them all, where they have all accepted and enjoyed the fruits of the litigation.

Judgment reversed, and cause remanded for a judgment as above indicated.