Argued June 26, reversed and petition allowed in part September 9,
rehearing denied December 16, 1924.

# RE FALING ESTATE.

## RE PETITION OF COY BURNETT, EDWIN E. HECK-BERT AND RUSSELL E. SEWALL.

### (228 Pac. 821; 231 Pac. 148.)

**Courts—County Court has Exclusive Jurisdiction in First Instance in Probate Matters.**

1. County Court has exclusive jurisdiction in first instance to take proof of wills, to grant and revoke letters testamentary of administration, and to direct and control conduct and settlement of accounts of executors and administrators.

**Courts—Mode of Proceeding in Probate Court Similar to That in Suit in Equity.**

2. Mode of proceeding in probate court is in the nature of that in a suit in equity as distinguished from an action at law, under Sections 936, 1135, Or. L.

**Courts—Circuit Court, Having Jurisdiction in Will Contest, Could Determine Attorneys' Petition for Fees.**

3. Circuit Court, department of probate, having jurisdiction in will contest in which it held one instrument void as will and other instrument a valid will, had jurisdiction to determine attorneys' petition for fees.

**Will—Contestant Could Offer Another Will for Probate in Same Proceeding.**

4. In will contest by decedent's next of kin, in which it developed that decedent had left other will, the legatees therein could petition court for probate of such other will, under Section 1139, Or. L.

**Attorney and Client—Right to Compensation Depends on Fact of Employment.**

5. The right of an attorney at law to collect payment for his services depends on the fact of his employment.

**Wills—Attorneys' Fees Chargeable to Estate on Theory That Services Benefited Estate as Whole.**

6. When attorneys' fees are chargeable to estate, it is on theory that they were incurred for benefit of estate as whole.

**Champerty and Maintenance—Ordinarily, Champerty Defense Only Between Parties to Contract and must be Pleaded.**

7. Generally, champerty is only defense in action between parties to champertous contract, and to be available must be pleaded.

1. See 28 R. C. L. 362.
5. See 2 R. C. L. 1032.

**Champerty and Maintenance—Ordinarily, Attorney may Recover on Quantum Meruit Where Contract is Champertous.**

8. Generally, where contract between attorney and client for prosecution of an action is champertous, the attorney may recover on *quantum meruit* in same manner as if unlawful agreement had never existed.

**Wills—Attorney Fees not Allowed Under Contingent Fee Contract Because of Lack of Employment by Beneficiary of Services.**

9. Attorneys contesting will on behalf of next of kin under contingent fee contract *held* not entitled, on conclusion of contest resulting in decree holding will void and another will valid, to recover under such contract as against charitable institution which was principal beneficiary under other will, and which had not joined in employment of attorneys.

**Attorney and Client—Attorney, not Entitled, as Against Beneficiary of Services, to Recover Under Express Contract Held Entitled to Reasonable Fee.**

10. Attorney, rendering services beneficial to estate as whole in contesting will and securing probate of another will, though not entitled to recover under contingent fee contract as against principal beneficiary under probated will because not employed by latter, *held* entitled to reasonable fee chargeable to estate.

### ON PETITION FOR REHEARING.

**Attorney and Client—Allowance of $21,000 Fee for Establishing True Will Held Authorized.**

11. Allowance of $21,000 fee to attorneys for establishing true will *held* authorized.

---

See (1) 6 C. J. 748; 40 Cyc. 1368.
See 6 C. J., § 301; 11 C. J., §§ 101, 105; 15 C. J., §§ 421, 424 (1926 Anno.), 429; 40 Cyc. 1227 (1926 Anno.), 1366 (1926 Anno.), 1367.

From Multnomah: George Tazwell, Judge.

In Banc.

The appellants filed their petition in the Circuit Court of the State of Oregon for the County of Multnomah, department of probate, in which they averred, among other things, that they are attorneys at law of this state, maintaining offices, as such, in Portland, Oregon; that Xarifa J. Faling died testate in Port-

---

See 28 R. C. L. 362.
8. Right to recover value of services rendered under champertous contract, see note in Ann. Cas. 1913B, 190. See, also, 2 R. C. L. 1039.

land, Oregon, on July 5, 1917, age 76 years, leaving an estate consisting of real and personal property of the value of approximately $500,000; that on July 9, 1917, Thomas N. Strong and C. L. Mead offered for probate in the County Court of Multnomah County, Oregon, a purported will executed by Xarifa J. Faling, bearing date August 26, 1915, which set forth a number of legatees to each of whom was bequeathed the sum of $3,000, and devised and bequeathed to Thomas N. Strong and C. L. Mead, in equal shares, all the remainder of the estate, both real and personal, aggregating in value a sum greater than $450,000. These two legatees were nominated in the will as executors. The petition avers that on that day, by order of the court, Strong and Mead were appointed executors of the will, qualified as such, took charge of all the property of the estate, and proceeded with the administration. It is then averred that on August 26, 1915, the date of the execution of the will hereinabove referred to, Xarifa J. Faling was not of sound and disposing mind and memory, and that on August 23, 1917, the appellants, as attorneys for W. Tyler Smith, as next of kin of Xarifa J. Faling, instituted a proceeding for the purpose of having that will declared invalid and void on the ground of mental incapacity of the testatrix and of undue influence exercised upon her at the time of its execution. An answer to that petition was filed by Thomas N. Strong and C. L. Mead individually and as executors, in which they denied the incompetency of Mrs. Faling and alleged that at the time of the execution of the will she was in every particular competent to make a will, and that she was of sound and disposing mind and memory and fully understood what she was doing, and that the will of August 26, 1915, was valid. These petitioners, as attorneys for

W. Tyler Smith, filed a reply to the answer of the executors, in which denial was made of all the affirmative allegations of the answer relating to mental capacity of the testatrix and absence of undue influence exercised upon her. On November 12, 1917, the cause came on for hearing before the court, upon the issues made by the pleadings. During the progress of the trial, the evidence developed that on August 25, 1911, Xarifa J. Faling had made a will, to which she had subsequently added six codicils, in which will she bequeathed and devised her property in a manner wholly different from the disposition claimed by Strong and Mead under the will of August 26, 1915.

Petitioners aver that upon learning of the 1911 will and its contents, assignments of certain bequests made by that will were executed and delivered to W. Tyler Smith; that thereafter, and on July 2, 1918, petitioners filed an amended petition in the will contest, on behalf of W. Tyler Smith, as assignee, and on behalf of all other beneficiaries under the will of August 25, 1911, which averred that the pretended will of August 26, 1915, was invalid and void by reason of the mental incompetency of the testatrix, and that she was acting under undue influence exercised upon her at that time by C. L. Mead and others, and alleged that the will of August 25, 1911, with the codicils thereto, constituted the last will and testament of Xarifa J. Faling, prayed for a decree declaring the same to be her last will and testament, and that the same be established and probated as such. An answer was filed to the amended petition by Strong and Mead, individually and as executors, in which they averred that the will of 1911, with the codicils thereto, was not the last will and testament

of Mrs. Faling, and averred that her last will was that of August 26, 1915.

It is averred that the trial of the cause extended over several months in the taking of testimony and the argument of counsel; that after months of investigation, 90 witnesses were produced in court by appellants in support of the allegations of their petition contesting the will, and that about 50 witnesses were produced by Strong and Mead in defense. The hearing occupied 82 days in the taking of testimony and arguments of counsel. The probate court denied the contention of appellants on behalf of the will of August 25, 1911, and entered a decree ratifying and confirming the probate of the will of August 26, 1915, as the last will and testament of Xarifa J. Faling, and made an order dismissing the proceedings brought by the appellants. The cause was appealed to the Circuit Court, the trial there occupying 50 days. The Circuit Court also sustained the will of 1915 and held against the will of 1911. An appeal was taken to the Supreme Court of the State of Oregon, where the cause was again well briefed and vigorously tried. This court sustained the contest proceedings against the will of August 26, 1915, holding that that will was void and not the last will and testament of Xarifa J. Faling, on the ground that at the time of the execution thereof she was not of sound and disposing mind and memory, and that the will of August 25, 1911, with the codicils thereto, constituted the last will and testament of Xarifa J. Faling and should be admitted to probate.

Petitioners aver that Strong and Mead then filed a petition for rehearing, and allege the disposition thereof by this court. They further aver that Strong and Mead expended a sum of money aggregating over

$75,000 in their endeavor to prevent the property from coming into the hands of the rightful legatees; that the litigation whereby the fund was preserved was conducted and carried to a conclusion by these petitioners for the benefit of all the rightful beneficiaries thereof, and that the interests of all legatees were promoted thereby. They aver that one third of the estate is a reasonable fee to be allowed the petitioning attorneys, and that the beneficiaries under the will of 1911 and codicils had at all times full knowledge that in the event of the successful conclusion of the will contest, the petitioners should receive one third of the estate as a reasonable fee, and that the beneficiaries at no time objected to the amount claimed by petitioners and have accepted the benefit of petitioners' endeavors. It is further averred that the compensation of the petitioners was wholly contingent upon their success in the litigation;—

"That compensation amounting to one third of the value of the fund so rescued and recovered by your petitioners from the wrongful claimants as aforesaid is reasonable compensation and a reasonable sum and share to be allowed for the time, expenses, services and results accomplished by themselves and their associate attorneys; that they have received nothing on account thereof, and your petitioners claim a first and prior lien therefor upon all of the said fund.

"Wherefore, your petitioners pray for a decree of this court as follows:

"1. That your petitioners have allowed as compensation for their professional services and those of their associate attorneys in this cause and for disbursements in and about the prosecution of this cause, and in the production and creation of the said fund for its proper owners, one third of the said fund so produced, and that the said one third thus awarded to your petitioners be declared to be a first and prior lien thereon, and that the same be

deducted, allowed and paid prior to any and all other claims, and before any of the beneficiaries under the said will of 1911 be permitted or allowed to partake of or share in any of the said fund.

"2. For such other and further relief as to the court may seem meet and equitable in the premises."

The Children's Home, formerly known as "The Home," with leave of the court, filed an amended answer, admitting much of the matter contained in appellant's petition, qualifying it in part, denying still other portions, and alleging as a further and separate defense, among other things—

"That the will of 1911, which has been decreed to be the true and genuine last will and testament of Xarifa J. Faling, deceased, was produced and proved by the proponents of the 1915 will, and that said will of 1911 and the evidence proving the same were adduced under the repeated and strenuous objection of the contestants, for whom the petitioners herein did then and do now appear."

The answer averred that the petitioners applied to the Board of Trustees, the governing body of the Children's Home, for authority to carry on the will contest in their behalf and to contract with them for a contingent fee, which application the Children's Home, through its board of trustees, refused. Further:

"That neither the Children's Home nor the petitioners did or could, at any time, understand that the Children's Home accepted the services of the petitioners or was in any way or to any extent under obligations of any nature to the petitioners; that in connection with the estate of Xarifa J. Faling, the Children's Home has been represented by counsel of its own selection and filed its answer to the petition in intervention of Frances Gray et al. hereinafter mentioned; that in connection with said estate the petitioners have never been employed by or author-

ized to appear for or to act on behalf of the Children's Home or Thomas N. Strong and C. L. Mead, as executors under the 1915 will, or A. L. Mills, as executor under the 1911 will, and in fact the petitioners have not appeared for or acted on behalf of any of them."

It then averred that the only persons whom the petitioners did represent or were entitled to represent in the will contest were W. Tyler Smith, Phoebe Smith, as executrix of the will of W. Tyler Smith, deceased; Lot Q. Swetland, Frances Gray, Sarah Gray Warnecke, Alice Meredith Gray, Thomas Gray and August Warnecke.

The answer set out an averment contained in a petition filed by two of the appellants as attorneys in behalf of W. Tyler Smith, wherein it was alleged that W. Tyler Smith was the sole first cousin and the next of kin and sole heir of Xarifa J. Faling, and that the petitioners acted as attorneys for Smith in his contest of the will of 1915, "and during all said period, to wit, from August 23, 1917, to July 2, 1918, said contest was conducted by said Smith" for the sole purpose of showing that Mrs. Faling died intestate and that Smith was her only heir. It then averred that Strong and Mead, the proponents of the 1915 will, proved the 1911 will over objections of Smith's attorneys, petitioners herein, and that immediately thereafter Smith obtained and had assigned to him the claims of certain legatees under the 1911 will, and in July, 1918, Smith, as assignee, for himself, and for Lot Q. Swetland, a legatee under the 1911 will, and all others similarly situated who should come in and make themselves party petitioners at the proceeding, filed the amended petition referred to in appellants' petition herein. It averred that in July, 1918, Frances Gray, Sarah Gray Warnecke, Alice Meredith Gray, Thomas Gray and August Warnecke,

as legatees under the 1911 will, filed their petition in intervention, in the contest instituted by the amended petition of W. Tyler Smith, and also sought to establish the will of 1911 as the last will of Mrs. Faling;—

"That prior to July, 1918, more than 11–12 of all the testimony taken in all the proceedings relating to the estate of Xarifa J. Faling was taken and a corresponding proportion of all the work in said proceedings in the trial court was performed * * for the sole purpose of obtaining the property of said estate for said W. Tyler Smith."

The answer concluded with a prayer for dismissal of appellants' petition. The petitioners replied to the answer of the Children's Home by denying each and every allegation contained therein which was not a direct admission of the allegations of their petition. Evidence was adduced in support of the issues joined by the petition and the answer. On the trial, many lawyers of eminent standing in their profession testified in the matter of the compensation, and at its conclusion the trial court, on July 31, 1923, entered an order reading:

" * * It is therefore ordered, adjudged and decreed that the petition of said petitioners, Coy Burnett, Edwin E. Heckbert, and Russell E. Sewall, be dismissed for the reason that the circuit court of the state of Oregon for the county of Multnomah sitting in probate has no jurisdiction to adjudicate the matters set forth in said petition."

Petitioners appeal to this court and say that there is manifest error on the face of the record, in this: In making the order or decree of July 31, 1923; in holding that the court had no jurisdiction to adjudicate the matter set forth in appellant's petition, and in not awarding to petitioners the compensation prayed for.

For appellants there was a brief over the names of *Messrs. Clark, Middleton, Clark & Skulason* and *Mr. W. D. Burnett,* with an oral argument by *Mr. A. E. Clark.*

For respondents Security Savings & Trust Co. and the Children's Home there was a brief over the name of *Mr. Rogers MacVeagh* and *Mr. Blaine B. Coles,* with an oral argument by *Mr. MacVeagh.*

BROWN, J.—The Circuit Court, probate department, allowed handsome fees to the defenders of the will declared by this court to be invalid, but, on jurisdictional grounds denied the petition for attorneys' fees of the attorneys of the legatees, who successfully contested the fraudulent will and successfully propounded the valid will of testatrix.

1, 2. The County Court has the exclusive jurisdiction, in the first instance, to take proof of wills, to grant and revoke letters testamentary of administration, and to direct and control the conduct and settlement of the accounts of executors and administrators. The mode of proceeding in a probate court is in the nature of that in a suit in equity, as distinguished from an action at law: Or. L., §§ 936, 1135.

In *Leadbetter* v. *Price (Re Pittock's Estate)*, 102 Or. 47 (201 Pac. 428), Mr. Chief Justice BURNETT, speaking for this court, said:

"Following the line of reasoning as to the jurisdiction of the circuit court in this instance which was adopted in the case of Pittock's Will, 199 Pac. 633, we are compelled to the conclusion that the circuit court in which this proceeding was litigated had jurisdiction to decide all the questions presented, not only those formerly committed exclusively to the county courts, but also to decide cognate issues rightly joined in that tribunal. * * When this litigation was presented to the circuit court, that tribunal was acting

not only with respect to the probate jurisdiction, but also to the general jurisdiction originally vested in such courts.''

3, 4. There can be no doubt that the Circuit Court of Oregon, for Multnomah County, department of probate, is clothed with ample power to proceed with the settlement of the affairs of this estate in accordance with equitable procedure and principles. The subject matter of the petition was within the jurisdiction of that court. Furthermore, the legatees were entirely within their rights when petitioning the court for the probate of the will of 1911: Or. L., § 1139. In order to probate the valid will, it was necessary to invalidate the false will.

From our statement it appears that the petitioners and appellants herein are the attorneys who successfully conducted the Faling will contest, official report of which case appears in 105 Or. 365 (208 Pac. 715).

That the petitioners rendered valuable services to the Faling estate is unquestioned. It was through their efforts that the estate is to be distributed in accordance with the wishes of the testator. It was through litigation conducted by them that the property of the Faling estate was recovered from the wrongful possession of Strong and Mead and preserved for lawful distribution. Under the will of August 26, 1915, the Children's Home was willed a legacy in the amount of $3,000. Under the will of 1911, proved as a result of the litigation, the Children's Home is devised a specific tract of real property of the value of $200,000, and is made the residuary legatee of more than $200,000. As the result of the annulment of the 1915 will and the establishment of the true and genuine will of Mrs. Faling, the benefits to the Children's Home have been increased more than one hundred and thirty fold. Yet, the

Children's Home objects to compensating the attorneys for fighting the legal battle that recovered, preserved and enhanced the value of its legacy many times. It may be, however, that the enormous fee claimed by the petitioners gives rise to the objections.

The will contest was initiated in the first instance by two of the appellants on August 23, 1917, on behalf of W. Tyler Smith, sole first cousin and heir at law of the deceased, under a contingent fee contract with Smith for one third of the estate, provided they succeeded in setting aside the will of 1915 and in having Smith declared the sole heir. In the beginning of the contest, neither Smith nor his attorneys had any knowledge concerning the will of 1911. A large portion of the evidence was gathered and adduced upon the hearing of the contest waged by Smith against the 1915 will before he or his attorneys learned of or attempted to probate the will of 1911, which makes the Children's Home its chief beneficiary.

The Children's Home, through its representatives, asserts that it never employed the petitioners, and, of course, no other legatee had a right to bind it or the estate by the contingent fee contract above alluded to.

5. It is a familiar rule that the right of an attorney at law to collect payment for his services depends on the fact of his employment.

The leading case of *Forman* v. *Sewerage & Water Board,* 119 La. 49 (43 South. 908, 12 Ann. Cas. 773), contains many authorities approving the rule of law laid down in 3 Am. & Eng. Ency. of Law (2 ed.), at page 438, as follows:

"Where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such services, from the nature of the case, extends to all

113 Or.—2

the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorney's fees."

The court quotes the following from the prior Louisiana case of *Cooley & Lacoste* v. *Cecile,* 8 La. Ann. 51:

"It often occurs that the valuable services of counsel inure to the benefit of others than those who have employed them. Large interests often include small ones in matters of litigation. As we have said in the case of *Roselius* v. *Delachaise,* 5 La. Ann. Rep. 481 (52 Am. Dec. 597), for such services counsel cannot recover against parties who have not employed them."

The court further quotes from *Chicago, St. C. & M. R. Co.* v. *Larned,* 26 Ill. 218, where it is held, in effect, that the right of an attorney to remuneration depends on a contract or appointment, and he cannot recover from one who did not employ him, however valuable may be the result of his services.

See, also, *Westmoreland* v. *Martin,* 24 S. C. 238; *Hotchkiss* v. *Leroy,* 9 Johns. (N. Y.) 142; *Smith* v. *Lyford,* 24 Me. 147.

The opinion of the court, in *Forman* v. *Sewerage & Water Board, supra,* concludes with the following:

"Knowing how arduous and valuable and meritorious were the services of Mr. Forman, it is with regret that the court finds itself compelled to decide against him."

In support of the necessity of employment in order to recover for services by an attorney at law, see the following additional cases: *Wailes* v. *Brown,* 27 La. Ann. 411; *Kernan's Succession,* 105 La. 592 (30 South. 239), holding that attorneys who were employed by certain heirs were not entitled to fees out of the entire fund of succession; *Re Morvant,* 46 La. Ann. 301 (14 South. 922); *Rives* v. *Patty,* 74 Miss. 381

(20 South. 862, 60 Am. St. Rep. 510); *Cleveland, C. C. & St. L. R. Co.* v. *Shrum,* 24 Ind. App. 96 (55 N. E. 515); *Lamar* v. *Hall,* 63 C. C. A. 521 (129 Fed. 79); *Humes* v. *Decatur Land Improvement etc. Co.,* 98 Ala. 461 (13 South. 368).

In *Chicago etc. R. Co.* v. *Larned,* 26 Ill. 218, the court said:

"Whatever there may be in this claim in a moral point of view, it would be a most dangerous precedent to hold that, because the defendant had sat silently by and let counsel employed by another argue a cause, which, if won, would secure his interest, therefore he agreed to pay the counsel in proportion to the benefit thus received. Certainly the defendant never supposed that it had retained the plaintiff, nor is there any evidence to show that the plaintiff supposed that he was retained by the defendant."

In the case of *Westmoreland* v. *Martin,* 24 S. C. 238, the court said:

"The courts, however, have sometimes decreed counsel fees to attorneys not employed by the party himself subjected to the fee, but by one whom the law regards as the representative of such party, and, consequently, authorized to contract for him. Thus, attorneys' fees must in every case rest on contract made by the party charged himself, or by his representative. We mean the right to fees, the amount, in the absence of a sum agreed upon, of course depending upon labor and services rendered. Thus it is, that the property of infants, lunatics, and others, who must appear by representatives, may be charged for the fees of attorneys employed by such representatives. And thus it is, too, that the attorney employed by one of a class, interested in a common property, to recover, protect, and defend said property for the benefit of all, may be allowed a fee out of the common fund. But we know of no law which can subject one to a charge for services which have not been authorized by him, neither directly nor through his representative. No legal claim for compensation

can be founded upon services incidentally benefiting a party, other than the employer, as against that party, and because of the incidental benefit. * * In such case, there might be some moral equity underlying the claim, but this equity has never yet been brought within the jurisdiction of the courts. It has been left to the moral sense of the party benefited."

The following is a succinct statement of the rule:

"The creation of the relation of attorney and client by contract express or implied is essential to the right of the attorney to compensation. * * The essential feature of the professional relation is the fact of employment to do something in the client's behalf. There must be an agreement, express or implied, for compensation." 2 R. C. L., p. 954.

To similar effect is 6 C. J., p. 730.

"A 'contingent fee' is one which is made to depend upon the success or failure in the effort to enforce a supposed right, whether doubtful or not." 6 C. J., p. 740.

Was there an express contract between the petitioners and the Children's Home by which the latter undertook to pay the former fees contingent upon the result of the will contest?

The petitioners rely upon the oft-expressed formula that a trust estate must bear the necessary expenses of its administration.

The leading case announcing that doctrine in this country is that of *Trustees* v. *Greenough*, 105 U. S. 527 (26 L. Ed. 1157, see, also, Rose's U. S. Notes). Based upon that doctrine, this court, in *Wemme* v. *First Church of Christ, Scientist*, 110 Or. 179 (219 Pac. 618), allowed compensation from the funds restored to the trust.

In the case of *Trustees* v. *Greenough, supra,* the principal suit was commenced in 1870, by a bill filed by one Francis Vose, a holder of bonds of the Florida Railroad Company, on behalf of himself and the other

bondholders, against trustees of the Internal Improvement Fund of Florida and others. The fund consisted of large tracts of land belonging to the estate, including certain proceeds of the sale of some of them, and was pledged for the payment of the interest accruing on the bonds and installments of the sinking fund for meeting the principal, which were largely in arrears. The bill charged that the trustees were wasting and destroying the fund by selling the land at nominal prices. Further, it undertook to have the fraudulent conveyances set aside and the trustees enjoined from selling more land, and sought for a receiver to take care of the fund. The complainant bore the burden of the litigation and advanced the necessary expenses. Some years after the commencement of the suit, he filed a petition setting forth his advances and the efforts made by him, and sought to obtain an allowance out of the fund for his expenses and services. An order was made by the court referring the petition to a master to ascertain certain facts, who, upon investigation, reported, among other things:

"I further find and report that peculiar and great personal services have been rendered by the petitioner, Francis Vose, in the work of protecting the Internal Improvement and the sinking funds. * * By the instrumentality of the suits already mentioned as having been instituted by him, by the agencies he employed and sustained, and by his own vigilance and personal efforts he has saved from spoliation and subjected to the decrees of this court a vast domain of over ten millions of acres of land, and has brought into this court large sums of money, which, from time to time, have been distributed by its orders."

Based upon the report, notwithstanding there was opposition filed thereto, an order was made allowing sundry expenses for looking after and reclaiming the trust lands. From that order, an appeal was

taken to the Supreme Court of the United States. From Mr. Justice Bradley's discussion of the case, we quote many things peculiarly applicable to the instant case, including an expression relating to excessive attorneys' fees.

"It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority that, where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts. This has long been the rule in relation to proceedings for restoring property to the uses of a charity, which has been unjustly diverted therefrom. Thus, in *Attorney-General* v. *The Brewers' Company* (1 P. W. 376), Lord Chancellor Cowper allowed costs to the relators out of the improved rents which they received for the charity, 'for that they had been serviceable to the charity, by easing them of the 620 pounds debt which was claimed against them.'

"In *Attorney-General* v. *Kerr* (4 Beav. 297), it is conceded to be the general rule that the relator in a charity information, upon obtaining a decree, is entitled to his costs as between solicitor and client. In that case they were not allowed out of the general charity estate, but were charged upon the particular property recovered.

"The same rule was followed in *Attorney-General* v. *Old South Society*, 13 Allen (Mass.), 474.

"Of course, it is well understood that costs as between solicitor and client include all reasonable expenses and counsel fees, and are not like costs as between party and party, confined to the tax costs allowed by the fee-bill. This difference is pointed out in the case of *In re Paschal*, 10 Wall. 483, 493 [19 L. Ed. 992, see, also, Rose's U. S. Notes].

"The same rule is applied to creditors' suits where a fund has been realized by the diligence of the plaintiff. * * This was the judgment in * * *Thomp-*

*son* v. *Cooper,* 2 Col. C. C. 87. In the latter case, Vice-Chancellor Knight Bruce said: 'Having come in and proved, and obtained the benefit of the suit which was instituted on their behalf, as well as that of the plaintiff, it cannot be just that in such a suit— a suit instituted for the benefit of all the creditors— one alone should bear the burden, when others have the benefit.' * * (citation).

"In the vast amount of litigation which has arisen in this court upon railroad mortgages, where various parties have intervened for the protection of their rights, and the fund has been subjected to the control of the court and placed in the hands of receivers or trustees, it has been the common practice, as well in the courts of the United States as in those of the states, to make fair and just allowances for expenses and counsel fees to the trustees, or other parties, promoting the litigation and securing the due application of the property to the trusts and charges to which it was subject. Sometimes, no doubt, these allowances have been excessive, and perhaps illegal; and we would be very far from expressing our approval of such large allowances to trustees, receivers, and counsel as have sometimes been made, and which has justly excited severe criticism."

The case of *McIntire* v. *McIntire,* 192 U. S. 116 (48 L. Ed. 369, 24 Sup. Ct. Rep. 196, see, also, Rose's U. S. Notes), is authority for holding that the services of the petitioners were services to the estate. That case involved the contest of a will. One of the legatees who employed the attorneys afterwards became administrator. Pending the litigation, certain sums were paid to the attorneys out of the estate and charged in the first instance against the account of the legatees, without prejudice to a later application to have the whole amount of the fees charged against the estate. The litigation resulted favorably to the legatees who retained the attorneys. An application to charge the attorneys' fees against the estate was resisted. In its opinion, the court said:

"The general proposition is not disputed, but it is said that in this case the legatees retained the counsel and therefore ought to pay them. The other legatees as well as the administrator no doubt had a share in calling the counsel in. But that did not matter. The services were services to the estate in maintaining the testator's will, they were adopted by the administrator, and the usual rule must prevail."

The following excerpt contains a fair deduction from the decisions:

"In the absence of express statutory authority, the allowance and ordering payment out of an estate, or from one party to another, of expenses not taxable by statute, such as general counsel fees and the like, is improper, except as to counsel fees and other expenses reasonably incurred by an executor, guardian, or trustee, in the performance in good faith of his duties. Fees may be allowed to contestants only where the contest is justifiable." 40 Cyc. 1366, 1367.

To like effect is 26 Stand. Ency. of Proc. 303, 304, and note reading:

"A successful contestant whose action preserves the estate to be disposed of in accordance with the true will may be allowed his costs and attorney's fees out of the estate."

However, the authorities are not in harmony upon the question of the allowance of attorney's fees payable out of the estate, to one contesting a will. There is a line of cases denying the right of a contestant to attorney's fees. Other decisions hold that when there is reasonable ground for resisting a will, based upon competent and relevant evidence, contestant should be allowed attorney's fees payable out of the estate. Some states have statutes to that effect, although there are cases announcing that doctrine wholly independent of statutory enactment. There

are still other authorities to the effect that right to payment of attorney's fees out of the estate depends upon the contestant's success.

Illustrative of the authorities opposed to the allowance of attorney's fees is the case of *Koenig* v. *Ward,* 104 Md. 564 (65 Atl. 345). In that case the subject matter of the litigation concerned the allowance, out of the estate, of attorney's fees to the appellees, for services rendered by them as attorneys for Elizabeth Becker, a daughter of Frederick W. Koenig, in prosecuting a caveat filed by her to an alleged last will of her father, which had not been admitted to probate. In the litigation it was determined that the will was not the valid will of Koenig, and his estate, consisting of real and personal property, was distributed among his heirs at law and distributees. The result of the contest benefited Elizabeth Becker and a sister, both of whom had been cut off in the will. The Supreme Court held that it was not an issue between the estate and third parties, but one between those claiming to be interested in its distribution, and hence disallowed attorney's fees.

Illustrative of the decisions holding that the services rendered by the petitioners constitute legal expenses incurred in the administration of the estate, we refer to the following:

The case of *Smith* v. *Haire,* 138 Tenn. 255 (197 S. W. 678), presented the question whether the attorneys for the successful contest of a will were entitled to payment of their fees out of the estate as part of the expenses of administration. J. T. M. Haire died, leaving two writings, each of which purported to be his last will and testament. Under the provisions of one of them, the widow was named as executrix and appeared to be the sole beneficiary of the testator's estate. The other will devised cer-

tain property to the widow for life, and the remainder to the heirs at law of the testator. The widow propounded the first will. The heirs instituted a contest, alleging, among other things, that that will was procured by fraud and undue influence of the widow. These questions were determined against the validity of the will. The Supreme Court said:

"Expenses of this kind are not debts of the decedent. They are expenses incurred in the administration of the estate. This is true both as to compensation of executors, administrators, and their attorneys, and other persons who render services for the benefit of the estate. 18 Cyc. 443, 445. * *

"The defendant, as executrix, propounded the fraudulent will, by the terms of which she would have obtained the entire estate of the testator. If the contest had not been instituted, the real will of the testator would have been defeated and his estate would have passed to one for whom it was (not) intended. The attorneys, seeking compensation out of the estate, succeeded in defeating the fraudulent will and in establishing the true will. * * There can be no doubt but what the services of counsel in contesting the fraudulent will succeeded directly in establishing the true will. In this way their services inured to the benefit of the estate."

In *Re Merica's Estate,* 99 Neb. 229 (155 N. W. 887), Sarah J. Merica died, leaving what purported to be her last will and testament, which was offered for probate in Douglas County, Nebraska. The husband employed counsel and contested the will, which was set aside for want of testamentary capacity. He filed with the County Court a petition, praying that his expenses and attorney's fees be paid from the estate. The case, involving the claim for fees, finally reached the Supreme Court, where it was held that the petitioner was entitled to allowance of fees and expenses

out of the funds of the estate. In this discussion the court said:

"In the case at bar, the will was successfully contested and set aside on the ground that the deceased lacked testamentary capacity. The property was saved to the lawful heirs. The services were eminently necessary and irrefutably beneficial to the estate. The fact that the executor of the false will employed counsel and resisted the assault upon the will and lost argues strongly that the estate was benefited. The property does not pass according to the terms of the false will, but it passes to the lawful heirs. An unlawful distribution is prevented and a lawful one enforced. Measured by this rule, even where the employment is actually made by an executor or administrator, instead of by the surviving husband who is not a legatee, as in this case, it is difficult to imagine a case wherein the necessity of the employment and the certainty of the benefits to the estate would be any more pronounced than they appear to be in the one before us. Because the services were rendered before the will was set aside and the administrator appointed does not destroy the force of the fact that the estate received the protection and benefits just as surely as it would have done had the administrator made the employment. Had the administrator employed these attorneys, there would be no question under the authorities about the liability of the estate for the payment of their reasonable fees. By analogy, there ought to be no question about the allowance of a reasonable amount to the attorneys, to be paid from the estate *which they preserved for lawful distribution.*"

In *Re Statler's Estate,* 58 Wash. 199 (108 Pac. 433), a claim for attorney's fees was resisted upon the ground that the services performed by the attorney were without value to the estate and therefore, the claim being based upon the benefit of the estate, there could be no recovery. The court said:

"Considering the estate as an entity apart from the interest of its beneficiaries, it is probably a legitimate argument to say that it can make no difference whether the property of the estate is taken by one set of claimants or by another. But we do not understand that this is what is meant by benefiting the estate. The contest is made by one set of claimants against another, and the benefit derived therefrom inures to the successful claimants, and this we think is the benefit contemplated by the rule. Since the expenses, when allowed, reduce the residuary share of the successful claimants, they might justly complain if no gain was derived by them by the contest, but when the contest results in their gain, clearly it furnishes a sufficient consideration for the allowance contemplated by the statute."

The case of *Louisville Presbyterian Theological Seminary* v. *Botto,* 117 Ky. 962 (80 S. W. 177), is an instructive one. Mrs. Florence Irvine, as testatrix, executed her will, in which she left to 21 legatees legacies totaling about $236,000. Thereafter, she executed a codicil and on the following day married one William M. Botto, a young man many years her junior. Thereafter, she executed another codicil, by which certain legacies were revoked, others reduced in amount, while the legacies to her husband and his mother were increased from about $50,000 to approximately $150,000, and, by the terms of the codicils, were made preferred devises. The will, including its codicils, was admitted to probate. Thereupon, five legatees named in the original will filed a contest of the codicils executed after the marriage of the testatrix to Botto. It was proved that the codicils were executed through the fraud and undue influence of Botto and his mother. The contest resulted in securing to the devisees and legatees under the original will the sum of $100,000. At the conclusion of the contest, a petition was filed praying for counsel fees

and expenses incurred in making the contest, to be paid out of the common fund and before the distribution to the legatees. The legatees other than the five who had carried forward the contest, resisted the application. They filed a demurrer to the petition, which was allowed, and the cause was appealed to the Supreme Court. In rendering the opinion upon appeal, the court said:

"It is conceded by the demurrer that, if the codicils had stood, none of the legatees named in the original will would have received any substantial benefits therefrom, but that the whole estate left by testatrix would have been absorbed in the payment of the costs and expenses and the preferred devises made to the Bottos in the rejected codicils. The result of the contest made by appellants was to recover for the common benefit of the legatees under the original will a fund sufficient to pay between sixty per cent and seventy per cent of such devises. If the cost of this contest, including attorney's fees, is thrown upon the contesting legatees, they would receive a much smaller *pro rata* than their co-legatees, who were the equal recipients of the benefits resulting from such contest."

In the case of *Hollinger* v. *Syms*, 37 N. J. Eq. 221, it was held that, there having been reasonable ground for contesting the will, and costs and expenses in the orphans' court having been allowed, the attorney's fee of $500 should have been included.

In the *Matter of the Will of Lucy H. Eddy*, 33 N. J. Eq. 574, the court ruled that when a strong and well-founded doubt exists as to the mental capacity of the testatrix, the contestants are entitled to their costs and reasonable counsel fees. In that case Mr. Chief Justice BEASLEY, speaking for the court, said:

"Upon a careful consideration of the facts of the case, I have been led to the conclusion that there should be a modification of the decree, so far as to

allow costs and counsel fees to the contestants. The case, I think, is an exceptionally strong one on the side of the caveators. It would serve no useful purpose to discuss the evidence, or even to sketch the case in outline; it is enough to say that the circumstances were such as necessarily to excite well-founded doubts as to the mental capacity of the testatrix, and as to the force and character of the influence under which the testamentary act in question was performed, and that, therefore, there was plainly reasonable cause for the investigation induced at the instance of these caveators. Therefore, in my opinion, as I have said, their counsel fees and costs should be given to them out of the estate. * * I think that $2,500 should be allowed for the services of counsel in both courts, together with the costs of the caveators in each court.''

In the foregoing cases, no reference is made to a statute in force in the State of New Jersey (Gen. Stats., p. 2397, § 177) relating to costs and attorney's fees in will contest cases.

In *Rodney* v. *Burton,* 4 Boyce (Del.), 171, 86 Atl. 826, it was held that there was no probable cause or reasonable ground warranting the contest, hence the contestant was not entitled to attorney's fees.

The case of *Clark etc.* v. *Pepper's Admr.,* 132 Ky. 192 (116 S. W. 353), involved the question of contribution to the expenses of a suit.

Section 489 of the Kentucky statutes reads:

''In actions for the settlement of estates, * * if it shall be made to appear that one or more of the legatees, devisees, distributees, or parties in interest, have prosecuted for the benefit of others interested with themselves, and have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such person or persons reasonable compensation for such trouble, and for necessary expenses, in addition to the fees and costs; said allowance to be paid out of the funds recovered before

distribution, the persons interested having notice of the application for such allowance.''

In the Clark case cited above, the court comments as follows:

''The statute quoted does not introduce into the law a new principle. It is simply a statement of a rule of equity which is as old as equity jurisprudence. A trust fund in equity was always required to bear the expenses of its administration, and, when one of several owners at his own expense recovered a trust fund, he was always allowed his necessary expenses out of what he brought back.''

In the case of *Ford* v. *Gilbert,* 44 Or. 259 (75 Pac. 138), the court disallowed a claim for counsel fees upon the ground that they had recovered no fund for the common benefit of the creditors, but announced the principle that—

''When a fund is brought into court through the service of an attorney, or where his services have added to or preserved or increased the amount being administered, the court of primary jurisdiction may properly allow a reasonable compensation for his services to be paid from the fund.''

In the case of *Upham* v. *Bramwell,* 105 Or. 597 (209 Pac. 100, 210 Pac. 706, 25 A. L. R. 919), it was held by this court that expense of litigation was unnecessary to secure a direct order of distribution by the bank examiner of the funds of an insolvent bank in the course of liquidation. Mr. Justice McCourt, speaking for the court, said:

''In all of the cases cited by plaintiff, the party seeking an allowance of counsel fees and costs had, at his own expense, either recovered and brought in the court a fund or property that otherwise would have been lost to the creditors, or had instituted and prosecuted proper proceedings to save a trust fund already in court from destruction and to restore it to

the purposes of the trust, none of which conditions are present in the instant case.''

This is not a mere contest among the heirs and legatees in the matter of distribution of the estate. The contest proceedings preserved the real legacies and devises from destruction at the hands of Strong and Mead who had taken possession of the property under a fraudulent will. By virtue of the contest and the establishment of the will of 1911, the property of the estate was secured from the grasp of wrongful executors and fraudulent devisees and preserved for the Children's Home and the smaller legatees.

From the record introduced in this case, it appears that the real property of the Faling estate was inventoried and appraised at a valuation of $255,750, and that under the will of 1911 Thomas N. Strong and C. L. Mead, the executors thereof, were the sole devisees of the real property. If that will had not been contested, the title to all the real property would ultimately have passed directly to those two devisees as tenants in common, subject only to their right as executors to possession for the payment of debts: Or. L., § 1304. No debts were chargeable against the real property in the case at bar. In fact, this court, in the case of *De Bow* v. *Wollenberg,* 52 Or. 404 (96 Pac. 536, 97 Pac. 717), said:

''The title to all realty, upon the death of its owner, passes directly to the heirs of the decedent as tenants in common, subject only to the rights of the executor or administrator to possession for payment of debts. * * But the personal property by operation of law goes to the administrator or executor, in respect to which the county court has exclusive jurisdiction: *Winkle* v. *Winkle,* 8 Or. 193; *State* v. *O'Day,* 41 Or. 495, 500 (69 Pac. 542).''

6. Whenever attorneys' fees are properly chargeable to an estate, it is upon the theory that they were

incurred for the benefit of the estate as a whole. The books afford many illustrative cases holding that when a contest is narrowed down to the personal interests of proponents and contestants, claims for attorneys' fees against the estate should be denied: *Allen* v. *Seward*, 86 Iowa, 718 (52 N. W. 557); *Kirsher* v. *Kirsher*, 120 Iowa, 337 (94 N. W. 846); *In re Estate of Berry*, 154 Iowa, 301 (134 N. W. 867); *In Succession of Morvant*, 46 La. Ann. 301 (14 South. 922). In the case last cited the court said:

"In this particular case, the probating of the will was solely and exclusively in the interest of the special legatee, and to him his clients (his attorneys) must look. * * "

In *Re Estate of Berry, supra,* it was said:

"The effect of our previous decisions up to this point is to leave something to the discretion of the trial court in the allowance or nonallowance of attorneys' fees, and such question is to be determined upon a consideration of the substantial facts and circumstances of the contest."

We do not maintain that this cause is on all-fours with *Trustees* v. *Greenough, supra.* Neither is it, under the facts, squarely in point with *In re Wemme, supra.* These cases, like most cases, can be distinguished, one from the other. In truth, it is a rare occurrence to find two cases exactly alike in all particulars; but the oft-expressed principle that a fund in court must bear the expenses of its administration has long been invoked in this class of cases: *Clark* v. *Pepper's Admr., supra.* Petitioners' claim is not a debt of the Faling estate. It is an expense claim incurred in administration of the property of the estate.

113 Or.—8

In the answer filed by the Children's · Home, the defense of champerty is not made. It cannot avail the objector. .

7. It is a well-established general rule that champerty is only a defense in an action between the parties to the champertous contract, and that to be available as such it must be pleaded: 4 Ency. of Plead. & Prac. 370.

"While in some jurisdictions the defense of champerty need not be pleaded, the more general rule is to the contrary." 11 C. J., pp. 271, 272.

8. It is a general rule that where a contract made between an attorney and client for the prosecution of an action is champertous, the attorney may recover from the client on the point of *quantum meruit* for services rendered in the same manner as if the unlawful agreement had never existed: 5 Am. & Eng. Ency. of Law (2 ed.), 828; *Nathan* v. *Peterson,* 177 Ill. App. 104; 6 Cyc. 880.

For a historical review of champerty and maintenance, see opinion of this court by Mr. Justice BEAN, in *Brown* v. *Bigne,* 21 Or. 260 (28 Pac. 11).

The object of restraining champerty and maintenance was to prevent "the traffic of merchandising in quarrels, of huckstering in litigious discord."

"In the United States * * ," say the editors of Ruling Case Law, "the great weight of authority recognizes the validity of contracts for contingent fees, provided such contracts are not in contravention of public policy, and it is only when the attorney has taken advantage of the claimant by reason of his poverty, or the surrounding circumstances, to exact an unreasonable and unconscionable proportion of such claim that it is condemned. * * Contracts for contingent fees are as much for the benefit of the client as for the attorney, because if the client has a meritorious cause of action, but no means with which

to pay for legal services unless he can, with the sanction of law, make a contract for a contingent fee to be paid out of the proceeds of the litigation, he cannot obtain the services of a law-abiding attorney, and if perchance he should find one who would secretly make with him a contract in violation of the law, he might put himself in unsafe hands." 2 . R. C. L., § 121, Attorneys at Law.

9, 10. The attorneys who successfully contested the 1915 will and established the will of 1911 have petitioned this court for an allowance to them, as compensation for their services, of one third of the property of the Faling estate. Petitioners further request that this compensation be declared to be a first and prior lien thereon, and that the same be deducted, allowed and paid prior to any and all other claims, and before any of the beneficiaries under the will of 1911 be permitted to share in any of the funds of that estate.

The fee sought to be collected amounts to more than $150,000. This amount would be taxed against a fund created, not by petitioners, but by Xarifa J. Faling. Before allowing the claim of petitioners, it is incumbent upon this court to ascertain the right and equity possessed by petitioners that clothes the court with power to tax that fund with such attorneys' fees. If the fees are paid from the funds of the estate, the Children's Home will be the principal payor. In other words, the fee exacted comes from a fund dedicated to charity by the bounty of Xarifa J. Faling. We bear this in mind in determining upon the size of the fee, if any, to be allowed: *In re Wemme, supra.*

There was no contract, express or implied, for a contingent fee, that binds the *corpus* of the estate. Much of the testimony relating to the reasonable value of petitioners' services assumed the existence

of such a contract. While it seems to the writer, from the evidence, that the board of trustees of the Children's Home was palpably neglectful of the common welfare of its trust, that fact does not authorize us to contract for the board.

The attorneys have rendered valuable services to the Faling estate. In ably carrying on the legal battle for their clients, they earned a substantial fee and should be, and are, entitled to just compensation. But it is a rule well established by authority that an attorney at law must look to his client who employs him, and not to those who do not employ him, for promised compensation. The contingent fee contract made by petitioners with an heir and certain legatees does not embrace other legatees. We have been cited to no precedent that would warrant this court in fixing a fee payable from the estate, upon a contingent fee basis. As compensation upon that basis, the petitioners seek one third of the Faling estate, or about $150,000. They invoke the equitable principle announced in the case of *Trustees* v. *Greenough, supra,* a doctrine wholly independent of statute. But the court, in that very case, warns against the practice of charging funds within the protection of the court with large attorneys' fees.

We have no power to recognize a contingent contract that was never made by the Children's Home. Moreover, a claim such as the claim of petitioners for a contingent fee of one third of this estate, consecrated to a charitable purpose, has no merit in a court of equity. However, as hereinbefore stated, petitioners have served the administration of the estate, and the property of that estate should bear a reasonable charge therefor in the sum of $21,000.

It is so ordered.                              REVERSED.

Rehearing denied December 16, 1924.

## ON PETITION FOR REHEARING.

(231 Pac. 148.)

*Messrs. Clark, Skulason & Clark* and *Mr. W. D. Burnett,* for the petition.

*Mr. Blaine B. Coles* and *Mr. Rogers MacVeagh,* contra.

PER CURIAM.—This is a petition for rehearing and reconsideration of the order of allowance made by this court to the petitioners for attorneys' fees in the matter of the estate of Xarifa J. Faling, deceased, on the petition of Coy Burnett, Edwin E. Heckbert, and Russell E. Sewall.

The attorneys filed their petition in the Circuit Court of the State of Oregon for Multnomah County, Department of Probate, in which they sought to obtain an order for allowance of their attorneys' fees for conducting the Faling will contest. The petition was denied. Upon appeal, this court ordered that petitioners be allowed the sum of $21,000 for their services rendered to the estate, which resulted in establishing the true will. For a full statement concerning the services for which they request compensation, see *In re Faling Will, Strong et al.* v. *Smith et al.,* 105 Or. 365 (208 Pac. 715); *In re Faling's Estate, Petition of Burnett et al., ante,* p. 6 (228 Pac. 821). In this connection, also see *In re Faling's Estate, Children's Home et al.* v. *Strong et al., supra* (229 Pac. 694).

Xarifa J. Faling died on July 5, 1917, leaving no immediate relatives. On July 9, 1917, a will bearing date August 26, 1915, was probated in common form

in the probate court of the State of Oregon for Multnomah County. On August 29, 1917, J. Tyler Smith, a first cousin of Mrs. Faling, who claimed to be her sole and next of kin and heir at law, represented by petitioners filed a contest of this will on the ground of mental incapacity on the part of the testatrix and undue influence exercised upon her at the time of the execution thereof. Strong and Mead, the executors of the will and the chief beneficiaries thereunder, answered and denied the incompetency of Mrs. Faling to make the will, and also denied that there was any undue influence brought to bear upon her for the purpose of inducing the execution of that will. They further asserted that the will admitted to probate was the valid last will and testament of Mrs. Faling. Each side was ably represented by skilled counsel.

During the contest, the beneficiaries asserted that Mrs. Faling had executed a will in 1911, which will the petitioners ultimately asserted to be the true and genuine will, and which they succeeded in having probated as such. For the great amount of labor performed by the petitioners, see the cases above noted.

While the 1915 will was upheld by the lower courts as the true will of Mrs. Faling, in this court that will was set aside and held to be invalid, and the will of 1911 was held to be her true will. See *In re Faling's Estate, Strong et al.* v. *Smith et al.*, 105 Or. 365 (208 Pac. 715). We there directed, as a part of the decree, that—

"Under all the circumstances, the costs and disbursements of this proceeding in this court and in the lower court should be paid by the estate of Xarifa J. Faling, deceased. It is so ordered."

In the preparation of our opinion reported *ante,* p. 6 (228 Pac. 821), we assumed that the petitioners had collected their costs and expenses incurred in the will contest, as provided by the decree in that case. We allowed the petitioners the sum of $21,000, as reasonable attorneys' fees for services rendered by them in conducting the necessary litigation for proving the will of 1911. We did not there, nor do we here, make any allowance for their services rendered to J. Tyler Smith prior to their attempt to establish the will of 1911.

It is argued with much earnestness and force and reason that the petitioners ''are entitled, morally and equitably, to as much compensation as was judicially allowed to those who sought unsuccessfully to uphold the invalid will.''

This court has never held, nor intimated, that the amount of fees ordered by the lower court to be allowed Thomas N. Strong and C. L. Mead for their attorneys' fees, and for their extra services as executors, were reasonable or just. There was an appeal from an order of the court settling the final account of Strong and Mead as executors under the alleged will of Xarifa J. Faling, deceased, of date 1915. But this court never acquired jurisdiction of that appeal. Without jurisdiction we were unable to determine the validity of the order made by the probate court. That appeal was dismissed by reason of a stipulation made and entered into between the attorneys for the executors, Strong and Mead, and the attorneys for the Children's Home. In that case (see 229 Pac. 694), Mr. Chief Justice McBRIDE, in speaking of the attorneys' fees, among other things, said:

''In this case the executors introduced the evidence of attorneys who placed the amount of compensation

which should be allowed as attorneys' fees at from $75,000 to $100,000. This testimony was from men of high standing in their profession, and was such as was entitled to some degree of credit from the court, although on the other hand other attorneys of high standing fixed the fees at from $20,000 to $25,000. Upon this testimony there was an issue of fact presented to the court as to what was a reasonable fee— whether the highest fee of $82,000, or the lowest, $20,000, was a reasonable fee. The court said $50,000. * * It is not necessary for us to say what our judgment would have been here, but each party had a right to appeal and to have its contention on this subject heard in this court. * * However, nothing here said is to be construed as precluding a remedy to the Home against trustees who may have fraudulently frittered away valuable rights.''

11. We adhere to our former opinion holding that $21,000 is a reasonable attorney fee for services rendered by petitioners to, and chargeable against, the estate of Xarifa J. Faling, deceased.

However, it is asserted, in effect, by petitioners' brief in support of their motion for a rehearing, that a burden amounting to about $10,000 in legitimate costs and expenses has been assumed by them in carrying on and conducting the contest resulting in the establishment of the true and genuine will, and that such costs and expenses have not been paid. This may be so. But from the record before us we cannot, after due diligence, ascertain the true and full amount of costs, charges and expenses incurred by them in that contest. Hence, while we disallow the petition for rehearing, we remand to the lower court the matter of the costs, charges and expenses incurred by petitioners in carrying on the contest for the annulment of the invalid, and the proving of the valid, will. In that court the petitioners may file and establish their claim for expenses and costs incurred by them

in the prosecution of the necessary proceedings in annulling the invalid will and establishing the will of 1911, which resulted in the preservation of the fund created by Mrs. Faling and willed by her to the Children's Home, and the court is directed to enter a judgment thereon.        REHEARING DENIED.